Napier *vs.* Napier.

No. 31.—LEROY NAPIER, plaintiff in error, *vs.* WM. S. W.
NAPIER, defendant in error.

[1.] Thomas W. Napier departed this life in 183–, having previously made a
will, bequeathing the whole of his estate to certain legatees, to the exclu-
sion of the complainant. Just before his death, having repented of this
act, and being anxious to make provision out of his large estate for his
son, but being unable then to alter his will, left it as his dying injunction,
that out of his residuary estate a reasonable portion should be set apart
and secured for the benefit of the complainant; subsequently the residuary
legatees raised by deed, $15,000, and vested it in a trustee, to apply $5,000
and no more, to the payment of the debts of the *cestui que trust,* and the
residue of the $15,000 was to be managed for the use of the complainant.
*Held,* 1st. That the *cestui que trust* was entitled to the balance of the
$5,000 after all the debts were paid, and that the same did not revert to
the donors. 2d. That whether or not the donors were imposed upon by
the *cestui que trust* in fixing upon $5,000 as the sum necessary for the pay-
ment of the debts, is wholly immaterial, inasmuch as they were not preju-
diced by the fraud. And, 3dly, That the balance of the $5,000 in the
hands of the trustee bears interest from the time the debts were all paid,
or it should have been added to the other fund of $10,000 from that period,
and used so as to make interest.

In Equity, in Bibb Superior Court. Tried before Judge
POWERS. November Term, 1852.

The bill alleges, that the defendant in error, who was the
complainant in the Court below, was the son of Thomas W.
Napier, who departed this life in the year 183–, having pre-
viously made a will, thereby bequeathing the whole of his
estate to certain legatees, and entirely cutting the complainant
out of any interest in his estate. The bill further states, that
after the exectution of the will, and just before his death, the
said Thomas Napier repented his said act, and being then
unable to have his aforesaid will in writing altered, and being
anxious to make a provision for the complainant out of his
large estate, declared it to be his will and injunction, that out
of the large mass of residuary legacies bequeathed in his will,
a resonable portion or amount of his said estate should be set

apart and secured for the benefit of complainant; that certain legatees under the will, in order to carry into effect the subsequently expressed wishes of Thomas Napier, in reference to complainant, on the 3d day of April, 1840, entered into certain articles of agreement, whereby the parties therein named covenanted and agreed mutually to and with the other, to raise a fund of $15,000, by equal contributions from the mass and residue of the said testator's estate, in proportion to the amount of their respective interest therein, and to pay the same forthwith into the hands of the defendant, and that the said sum should constitute a trust fund in his hands, and vest in him as trustee, and not otherwise, for the following purposes, and subject to the following trust, viz: to apply $5,000 thereof, and not more, to the disenthralment of the complainant from the debts he then owed, said defendant to judge of the justice of the said debts which might be presented to him for payment, and of the order and proportion in which they should be paid, but in no event should more than $5,000 of the said fund be applied to the payment of existing debts against complainant. "The residue of said fund of $15,000, was to be vested in, and managed by the defendant, as trustee, for the use, benefit and support of complainant, and by him employed and invested in such manner as to him shall be deemed best, and the annual profits of the same to be applied by defendant to the support of the complainant, but in no event was the principal sum to be diminished by the trustee."

The bill charges, that shortly after the execution of the instrument, the sum of $15,000 was paid, according to the terms thereof, into the hands of the defendant, as trustee for complainant, and that the defendant accepted the trust and received the said sum of $15,000.

Complainant charges, that the defendant had converted a large portion of the $5,000 designed first for the payment of the then existing debts against complainant, to his own use and benefit; that the defendant had used but a small sum in payment of complainant's debts, and that he was unable to

state what amount had been so applied; that the debts which have been taken up, had been bought up for a sum much less than was due thereon—the defendant sometimes paying only twenty-five cents in the dollar for the said debts ; and that the complainant now claims he should be allowed the full nominal amount of the debts so taken up by him, with a portion of the said fund of $5,000.

The prayer of the bill is, that the defendant may answer and account, and that he be decreed to appropriate such portion of said $5,000 remaining in his hands, to such debts as were due from complainant at the time of the execution of the articles of agreement, which in justice and equity, ought to be paid, under the discretion given to him, and that the defendant might pay over to the complainant the balance of the said $5,000 remaining in his hands, and that the profits and gains thereof, after the payment of the debts as before mentioned, or that the defendant might be decreed to use and control the said balance for the benefit of complainant, and account to him for the profits and gains thereof.

The defendant, in his answer, admitted all the material facts charged in the bill, in reference to the creation of the fund, his appointment as trustee, and the reception of said fund. He exhibited a schedule of moneys advanced by him for complainant, amounting in the aggregate to some twenty-three hundred dollars. To the answer was also attached a schedule of his debts, as furnished by complainant to the legatees, under the will of Thomas W. Napier, previous to the creation of the fund, amounting in the aggregate, to some $9,000.00, exceeding largely the true amount of complainant's indebtedness, and which, the answer charges, operated as a fraud upon the contributors to the fund for the extinguishment of his debts.

In his answer, defendant claimed 20 per cent. upon the amount disbursed by him, as a compensation for his services in executing the trust confided to him.

The answer charged, that defendant was vested with discretion. On the trial, complainant introduced the agreement

entered into by the contributors to the fund and closed his case.

The defendant then read in evidence the schedule of moneys disbursed by him in payment of complainant's debts.

He then proposed to read in evidence, the schedule which complainant had made out and furnished of his idebtedness previous to the creation of the relief fund. Complainant objected to its introduction. The Court sustained the objection, and counsel for defendant excepted.

Defendant then proposed to prove, by Thomas Napier and Nathan C. Munroe, that the paper attached as an exhibit to his answer, was furnished to the said Thomas Napier, by complainant before the fund was created, as a list of his debts, and at the request of the said Thomas Napier, and which paper was used by the legatees under the will as the data by which they were governed in their contributions.

The Court, on motion of complainant's counsel, ruled out the evidence, and counsel for defendant excepted.

Counsel for defendant requested the Court to charge the Jury, that whatever amount they might find remaining in defendant's hands, as a balance of the $5000.00 fund, after the extinguishment of complainant's debts, was an unliquidated demand, and not entitled to draw interest; which charge the Court refused to give, but did charge, that said fund, after the expriration of a reasonable time for the defendant to extinguish complainant's debts, was entitled to draw interest.

To which charge and refusal to charge, counsel for defendant excepted, and upon these exceptions has assigned error.

CHAPPEL, for plaintiff in error.

R. HARDEMAN, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] We will not stop to inquire whether it lies in the mouth of the trustee who has accepted the trust created by

this deed, to resort to the defence which he seeks to set up to defeat the complainant's recovery. Grant that there was fraud practised by the donee, so far as extinguishing the amount of his liabilities is concerned, the donors who contributed this fund are not complaining. Can he avail himself of the fraud to avoid accounting?

Another interesting question, well deserving of examination, is this: if the trustee has, in the exercise of the discretion delegated to him, settled the claims against the trust fund at a discount, will it not accrue for the benefit of the *cestui que trust?* Is he not entitled to be subrogated to the rights of the creditors for the full amount of their demands upon this fund of $5,000? *Green vs. Winters,* 1 *John. Ch. Rep.* 27. *McClanahans vs. Henderson,* 2 *A. K. Marshall,* 389. *Kellog vs. Wood,* 4 *Paige,* 578. *Parkist vs. Alexander,* 1 *Johns. Ch. Rep.* 394. *Holdridge vs. Gillespie,* 2 *Johns. Ch. Rep.* 30. *Hart vs. Ten Eyck,* 4 *Johns. Ch. Rep.* 104. *Davoree vs. Fanning,* 2 *Johns. Ch. Rep.* 457. *Matthews vs. Drayard,* 3 *Desseaus.* 25.

But we waive these grounds.

When this deed of trust was before this Court at this place, in 1849, upon a demurrer to the bill, we *held,* that the complainant was entitled to the unexpended balance of the $5,000 which had been set apart for the payment of his debts out of the general fund of $15,000 contributed by the residuary legatees under the will of Thomas Napier, senior, for his use and benefit. And, in our judgment, this construction of the instrument is conclusive upon all the questions raised upon this record. 6 *Geo. Rep.* 404.

It was the leading intent of the donors, in obedience to the dying wishes and injunction of their deceased father, as well as in accordance with their own feelings, to raise and appropriate the gross amount of $15,000 for the benefit of their brother, who had been accidentally excluded, by the will of their common parent, from participating in the common patrimony. The designation of $5,000 for the payment of his debts out of this fund, was a mere secondary matter, and made in subor-

dination to the main object. They supposed, from the state-
ment, which at their request, he supplied, that it would re-
quire $5,000 to pay his debts—they limited the fund to be
taken out of the $15,000 to that sum; and the residue com-
puted to be sure of $10,000 still. The *whole* ~*esidue*, be it
that or more, is expressly vested in the trustee for his support
and maintenance. And we have already adjudged that this
*residue* shall go to him. And whether the amount demanded
for the payment of William Napier's debts was over or under-
rated, either by him or the donors, by mistake or otherwise, is
obviously, in this view of the subject, a matter of no earthly
consequence; and fraud or no fraud, in ascertaining the ag-
gregate indebtedness of the beneficiary of this provision, is
an immaterial issue, and cannot affect the result, so far as the
liability of the defendant is concerned. The less the creditors
get, the more will be left in the hands of the trustee for his
*cestui que trust.* In any event, he cannot be injured. And
the donors, we are sure, will not regret that less is needed to
relieve their brother from his enthralment than they anticipa-
ted. They ought to rejoice rather, that they were misled in
this particular. Far, better far, that their bounty should go
to their blood-kin than to the blood-suckers who sought to de-
vour him. This remark is not intended for his *bona fide* cre-
ditors.

Had this instrument, a copy of which I have appended to
this opinion, been drawn differently, viz: *First,* creating a
fund of $10,000 to be vested in the trustee for the benefit of
the *cestui que trust,* and then contributing $5,000 to be ap-
plied to the satisfaction of his debts, or so much thereof as
might be required for that purpose, and out of the latter fund
a surplus had remained, after the execution of the trust; in
that event, it might have been contended with some plausibili-
ty at least, that this surplus would, *from construction of law,*
have reverted to the donors.* For, the true doctrine upon this
subject, we apprehend to be this: that if he who was before

---

*See note at the conclusion of this opinion

possessed of the whole, carves out of it a part, and grants it away, whatever is not granted remains in the donor. *Black-stone, title Reversion.* But such, we repeat, is not this case. But on the contrary, the manifest design of this deed is to raise and invest by voluntary contributions $15,000 for the complainant's benefit, and to devote so much of this fund only as may be needed to relieve him from his embarrassments; that being justly considered indisputably necessary for the respectability as well as comfort of their portionless relative.

With this interpretation of the deed, the second point, as to interest, becomes a plain one. It is admitted that the trustee was liable for interest on the $10,000, whether he made it or not. If then, the remainder of the $5,000, after the debts are extinguished, is to be added to the $10,000 and employed in the same way, that is, for the use and support of the *cestui que trust,* it follows of course, that it will bear interest from the time that all the debts are paid; so that the question mooted in the discussion, as to whether or not this balance is a *liquidated demand* or an *open account,* in contemplation of our Statute, does not arise. The balance in the hands of the trustee bears interest from the time it is relieved from the incumbrance of the debts, not because it is a *liquidated demand,* but because it is a trust fund to be managed by the trustee so as to make interest, and for which he is liable to pay interest even for his failure so to use it, unless he renders some satisfactory excuse. Here there can be none, for it is conceded in the argument, that his note of $5,000 due the estate of his father, and bearing interest, has been surrendered up to him to meet this liability for the debts of the *cestui que trust* under the deed.

Judgment affirmed.

NOTE.—It is possible that the instrument in its present shape may admit of this reading. It is not, however, its plain purport, especially when we take into consideration the avowed motives which prompted the parties to make it. Besides the deed is to be taken most strongly against the covenantors, and in favor of the *cestui que trust.*

(COPY.)

STATE OF GEORGIA, BIBB COUNTY:

Thomas Napier, deceased, late of said County of Bibb, in the State aforesaid, having, by his last will and testament, subjected the mass and residue of his estate to a division into sett parts: wherefore, one part is bequeathed to his son, Leroy Napier; one to his son, Skelton Napier; one to his daughter Tabitha, the wife of Nathan C. Munroe; one to the children of his deceased daughter, Sarah Harvey, which children are, Amanda Malvina, the wife of John D. Stell; Helen, the wife of Oliver W. Cox, and Tabitha, the wife of Myron Bartlett. One part to trustees in said will named, to wit: Leroy Napier, Skelton Napier, and Nathan C. Munroe, in trust for the testator's son, Thomas T. Napier, and the wife and children of the said Thomas T.; and one part to trustees in said will named, to wit: Thomas T. Napier, Leroy Napier, Skelton Napier and Nathan C. Munroe, in trust for the sole and seperate use of his daughter Martha, the wife of Henly Varner, under certain limitations in said last will expressed; and the said Thomas Napier, deceased, having during his last illness, declared it to be his wish and injunction, that out of the above mentioned mass and residue of his estate, a reasonable amount should be set apart and secured as a fund for the maintenance and support of his son, William Napier, and the undersigned legatees interested under the last will aforesaid, in the said mass and residue of the testator's estate, being desirous of carrying into effect the wishes and injunctions of the said Thomas Napier, deceased, so declared as aforesaid, and also according ourselves fully in the feelings of the said deceased towards the said William—This indenture, therefore, witnesseth, that the said Leroy Napier, Skelton Napier, Nathan C. Munroe and his wife, Tabitha; John D. Stell and his wife, Amanda Malvina; Oliver W. Cox and his wife, Helen; Myron Bartlett and his wife, Tabitha; the said Leroy Napier, Skelton Napier and Nathan C. Munroe trustees as aforesaid for the said Thomas T. Napier and his wife and children, with the assent of the said Thomas T. and the said Thomas T. Napier, Leroy Napier, Skelton Napier, and Nathan C. Munroe as trustees for Martha Varner as aforesaid, and with her assent and that of her husband, Henley Varner, signified by their becoming parties to this instrument and joining in the covenants of the same, have mutually covenanted with one another, and do hereby mutually covenant and agree with one another, to raise a fund of fifteen thousand dollars forthwith by equitable contributions from the aforementioned mass and residue of the testator's estate, proportioned to the amount of our respective interests in said mass and residue, that is to say, to the making up of the said fund of fifteen thousand dollars. The said Leroy Napier covenants and agrees to pay and contribute the sum of twenty-five hundred dollars. The said Skelton Napier covenants to pay and contribute the sum of twenty-five hundred dollars. The said Nathan C. Munroe, in right of his wife Tabitha, covenants and agrees to pay and contribute the sum of twenty-five hundred dollars. The said John D. Stell, in right of his wife Amanda Malvina; the said Oliver W. Cox, in right of his wife Helen Cox, and the said Myron Bartlett, in right of his wife Tabitha, covenant and agree to pay, EACH, the sum of eight hundred and thirty

Napier *vs.* Napier.

three dollars and thirty-three and a third cents, making twenty-five hundred dollars for the three. And the said Thomas T. Napier, Skelton Napier, Leroy Napier and Nathan C. Munroe, trustees, as aforesaid, for Martha Varner, covenant and agree as such trustees, and with the assent of the said Martha and her husband, Henly Varner, as hereinbefore stated, covenant and agree to pay and contribute the sum of twenty-five hundred dollars. And the said Leroy Napier, Skelton Napier and Nathan C. Munroe, as trustees of Thomas T. Napier and his wife and children, under said last will, covenant and agree, with the assent of the said Thomas T. Napier, to pay and contribute as trustees for the said Thomas T. and his wife and children, the sum of twenty-five hundred dollars. And the aforenamed covenanting parties do further covenant and agree to pay, each, his share in proportion as above stated of said fund of fifteen thousand dollars, forthwith into the hands of Leroy Napier. And they further covenant and agree that the said sum of fifteen thousand dollars so paid into the hands constitute a trust fund in his hands and vest in him as trustee, and not otherwise, for the following purposes, and subject to the following trusts, namely :. to apply five thousand dollars thereof, and not more, to the disenthralment of the said William Napier from the debts which he now owes, said Leroy Napier to judge of the justness of the debts which may be presented to him for payment, and of the order and proportion in which they shall be paid, but in no event shall more than five thousand dollars be taken from said fund of fifteen thousand dollars for the payment of existing debts. The residue of said fund of fifteen thousand dollars, to wit: the sum of ten thousand dollars, to be vested in and managed by the said Leroy Napier, as trustee, for the use, benefit and support of the said William Napier, the same to be invested and employed by him in such manner as to him shall be deemed best and most judicious, and the annual profits to be applied by the said Leroy Napier to the support and maintenance of the said William Napier; but in no event shall the principal sum of ten thousand dollars be encroached upon or diminished by said trustee for the purpose of providing for the support and maintenance of the said William, but the same shall be kept as an entire and productive fund for that purpose. And it is further stipulated, covenanted and agreed by and and between the parties hereto, that if at any future time the said Leroy Napier shall be of opinion that said fund may be prudently and safely given up and delivered over to the direct and immediate possession and management of said William without danger of the same being by him mismanaged and spent, then the said Leroy shall be authorized in his discretion, to pay and deliver over to the said William the said fund of ten thousand dollars, in whatever shape it may then exist or be invested, and to put an end to his said trusteeship hereby created. And it is further covenanted, stipulated and agreed, that the said Leroy Napier, during the continuance of his trusteeship, shall have absolute discretion as to the mode of investing and employing the trust fund committed to his hands. And he shall also have power to commit said trust to such other person or persons as he may judge proper, by deed, or by his last will and testament in writing. And the said Leroy Napier hereby agrees to accept and dis-

charge the trusts hereby created and reposed in him. And it is further stipulated and agreed, that the office of the said Leroy Napier as trustee as aforesaid, and his estate, powers and duties as such, shall be considered as having vested and taken effect, to all intents and purposes, immediately from and after the execution of this instrument.

In witness whereof, we and each of us have hereunto set our hands and seals, this third day of April, 1840.

THOMAS T. NAPIER, [L. S.]

LEROY NAPIER, [L. S.]

SKELTON NAPIER, [L. S ]

NATHAN C. MUNROE, [L. S.]

LEROY NAPIER, [L. S.] ⎞ Trustees for Thos.
SKELTON NAPIER, [L. S.] ⎬ T. Napier and
NATHAN C. MUNROE, [L. S.] ⎠ family.

Witnesses to the signatures of Thomas T. Napier, ⎞
Leroy Napier, Skelton Napier and Nathan C. ⎟
Munroe, trustees for Thomas T. Napier and family. ⎬
G. B. CARHART, ⎟
J. H. TAYLOR, N. P. ⎠

HENLEY VARNER, [L. S.]

MARTHA C. VARNER, [L. S.]

OLIVER W. COX, [L. S.]

Witnesses to the signatures of Henley Varner, Martha ⎞
C. Varner and Oliver W. Cox. ⎬
JOHN A. ELLIS, ⎟
H. J. WILLIAMS, J. I. C. Henry County. ⎠

JNO. D. STELL, [L. S.]

Witnesses to the signature of Jno. D. Stell, ⎞
BENJAMIN MORRIS, ⎬
JAMES KNOTT, J. P. ⎠

M. BARTLETT, [L. S.]

Witnesses to the signature of M. Bartlett, ⎞
B. H. MOULTRIE, ⎬
PETER SOLOMAN, N. P. ⎠

We the undersigned do hereby ratify and confirm the covenants, acts and doings of Leroy Napier, Skelton Napier and Nathan C. Munroe, trustees under the last will and testament of Thomas Napier, deceased, so far as relates to the intents and purposes mentioned in the foregoing instrument. Witness our hands and seals, at Macon, this 9th day of March, 1842.

JAMES L. DELANNEY, [L. S.]

WM. L. MAXWELL, [L. S.]

ELIZA B. NAPIER. [L. S.]

Attest

J. L. SAULSBURY,

J. L. OWEN, J. P.

GEORGIA, FIBB COUNTY:

We the undersigned do hereby ratify and confirm the covenants, acts and doings of Leroy Napier, Skelton Napier and Nathan C. Munroe, trustees, under the last will and testament of Thomas Napier, deceased, so far as re-

Thomason *vs.* Driskell.

lates to the intents and purposes mentioned in the within and foregoing instrument ' Witness our hands and seals, at Macon, this 3d day of May, A. D. 1845.

L. W. NAPIER, [L. S.]

THOMAS C. NAPIER. [L. S.]

Signed, sealed and delivered in the presence of

PETER SOLOMAN,

DAVID REID, J. P.

GEORGIA, BIBB COUNTY :

I, Leroy Napier, as trustee for W. T. W. Napier, have received of Thomas T. Napier, executor of Thomas Napier, deceased, ten thousand dollars, as in terms of the understanding of the legatees parties to the within instrument, this 30th March, 1842. The ten thousand dollars mentioned above was given in Commercial Bank stock, (say one hundred shares.)

LEROY NAPIER.

Recorded June 17th, 1845.