## JARVIS VS. DUTCHER, and others.

The object of sec. 53, chap. 28, R. S., was to enable the purchaser of school and university lands, or his assignee, to put the evidence of his equitable rights upon record, and to make such record notice to all the world of their existence, and to enable him to deal with the estate, as if he were seized in fee, subject to the conditions of the sale from the state.

A mortgage of an equitable estate in land, executed and acknowledged in the manner prescribed in sec. 1, chapt. 87, R. S., is an agreement concerning an interest in lands, and may be recorded in the proper county, and when recorded, it is notice to, and takes precedence of any subsequent purchaser, and operates as a lien upon the lands therein described, according to its import and meaning.

The purchaser of land, the title to which is derived by patent from the commissioners of school and university lands, is bound to take notice of the origin of his title, and if it proceeds from a certificate of sale, must see to it, that no transfer or incumbrance of the previous equitable estate has been made and recorded.

If a school land certificate has been recorded, the purchaser of it is bound to see that the equitable estate created by it, has not been conveyed or incumbered by deed or mortgage, duly recorded, and if it has been conveyed by a deed that has been recorded, the purchaser, though he may obtain *a. legal title to the certificate,* and afterwards procure a patent for the land, will acquire no beneficial interest therein, but becomes a mere trustee of a naked trust, holding for the use of the *equitable owner,* in whom the entire beneficial interest is vested ; subject to the payment of such sum as may have been paid by such trustee to the state on account of the purchase money.

The *equitable interest in the land,* created by a school land certificate, may be mortgaged, or transferred by deed, without an assignment or delivery to the purchaser or mortgagee of the certificate, but *the legal title to the certificate* cannot

be transferred without an assignment in writing, as prescribed by the statute; and the *beneficial interest* in the land may become wholly or in part vested in one person, and *the legal title to the certificate* in another.

If the grantee of the equitable estate does not procure the certificate to be assigned to him, he acquires no rights that can be enforced *at law*, and cannot obtain a patent for the land, nor maintain ejectment for it, or trespass for an injury to it unless he is in actual possession, but must resort to *equity* to compel a transfer of the certificate, where alone his estate can be recognized and protected.

An equitable mortgage may be created by deposite of the title deeds of a legal or an equitable estate, as security for the payment of money, or by a conveyance legal in its form of an equitable estate for that purpose, and if created in the former method, it must be foreclosed by a suit in equity to establish the lien, and for a sale, if the debt, interest and costs are not paid by a given day, but if by the latter, it may be foreclosed in the ordinary way. The cases of *Mowry vs. Wood* and *Dodge vs. Silverthorn*, 12 Wis., 413 and 644, commented on and followed.

APPEAL from the Circuit Court for *Dane* County.

This action was brought against *John A. Dutcher*, *Kellogg Sexton*, *Moses Eaton, Jr.*, *Jesse P. Palmer*, *Francis H. Williams*, *Elisha W. Keyes*,, *Abel Keyes* and James H. Howe, Louis P. Harvey and Samuel D. Hastings, commissioners of School and University lands, to quiet the title to forty acres of land, and the plaintiffs complaint alleges in substance that the land was sold by the commissioners of the school and university lands on the 12th day of September, 1850, to *George A. Cary* for the sum of .$545 of which he paid at the time of the purchase $41, and the further sum of $4.22 for interest on the unpaid purchase money up to the 1st day of June next thereafter, and received a duplicate certificate of sale, executed, countersigned and acknowledged by said commissioners, certifying the description of the land sold, the sum paid, and the amount due thereon; and that if *Cary* his heirs, assigns or legal representatives should pay to the state treasurer the further sum of $454, at any time within ten years thereafter, and also the interest annually in advance on the first day of January in each year on said amount, and should pay all taxes that should be levied on the land, then said *Cary* his heirs or assigns would be entitled to a patent for said land; that said certificate hav-

ing been lost or destroyed, said commissioners on proper proof, on the 16th day of January, 1856, issued to said *Cary* according to law, a certified copy of the original certificate of sale, which was recorded in the office of the register of deeds for said county on the same day, and that *Cary* took possession of the land under the original certificate of sale; that on the 14th day of January, 1856, said *Cary* and wife by a deed of conveyance by them executed, conveyed said land to one *Mercer*, which deed was recorded in the office of the register of deeds for said county, on the 16th day of January, 1856, and that at the date of said deed, *Cary* was the owner of said certificate, and that possession of the land was delivered by him to *Mercer* under said deed, about the time it was executed, and that said certified copy of the original certificate of sale was at the time it was issued, assigned to *Mercer*; that on the 23d of February 1856, *Mercer* mortgaged the land, and all his interest therein by a mortgage deed by him executed, to Gardner & Lyon to secure the payment of $781.61, due June 13, 1856, which mortgage was also recorded on the 23d of February, 1856; that default was made in the payment of the mortgage, and by the judgment of the circuit court for *Dane* county, rendered on the 11th day of April, 1857, in an action brought in said court to foreclose said mortgage, wherein said Gardner & Lyon were plaintiffs, and said *Mercer* and the plaintiff in this action, *Jarvis*, were defendants, it was ordered and decreed that said premises be sold to pay the amount adjudged due on said mortgage, and barring said *Mercer* and all persons claiming under him, of all right and equity of redemption in said premises, and that by virtue of said judgment, the premises were sold by the sheriff to the plaintiff and a deed thereof executed to him, which was recorded on the 2d day of November, 1857, and the said sale was afterwards confirmed by the court; that on the 18th of April, 1857, *Mercer* executed another mortgage of said land with covenants of warranty, to the plaintiff in this action, to secure the payment of $1000 in one year from that date,

which mortgage was recorded on the day of its date; that it was afterwards foreclosed in the circuit court court for *Dane* county in an action in which *Mercer* and others were defendants and said premises sold pursuant to the judgment, by the sheriff to the plaintiff in this action, and a deed executed to him therefor, and that such sale was afterwards confirmed; that *Cary* and his assigns have performed the conditions of the sale by the commissioners to him, except as to the payment of the said portion of the purchase money remaining unpaid; that on the 22d of November, 1858, the plaintiff applied to the commissioners of the school and university lands to complete said purchase, and tendered the amount of purchase money unpaid thereon, and demanded a patent therefor, but they refused to receive the money or issue a patent to him, claiming that he was not the party to receive the same; that on the 23rd day of January, 1858, said commissioners caused a patent for said land to be issued to the defendant, *Elisha W. Keyes*, conveying said land to him in fee, and it was issued to him as the owner of said certified copy of the original duplicate certificate by a pretended assignment thereof from *Mercer* to him, which was made after the execution and recording of said mortgages, and after the commencement of the first mentioned action to foreclose the first mortgage thereon, and with a full knowledge on the part of *Keyes* of all said conveyances; and that on the same day *Keyes* mortgaged the same to the state of Wisconsin to secure the purchase money of said land, being the said sum of $454; and has since conveyed all his interest in an undivided third thereof, to the defendants *Dutcher & Sexton*, and in one undivided third thereof to the defendants *Eaton*, *Palmer* and *Williams*, and the other third part thereof to the defendant *Abel Keyes*, all of whom claim an interest therein accordingly; that on the 4th day of February, 1860, said *Mercer* executed a deed of conveyance of said tract of land to the defendant, *Elisha W. Keyes*, and that he still claims some interest therein; that the defendants, *Howe*, *Harvey* and

*Hastings* are commissioners of the school and university lands: The complaint prayed that the title to the land might be adjudged to be in the plaintiff in fee, subject to the mortgage thereon to the state, to be assumed by him, and for general relief.

The defendants *Dutcher* and *Sexton* demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The circuit court made an order overruling the demurrer, and from this order the defendants, *Dutcher* and *Sexton* appealed.

*Smith & Keyes,* for appellants. 1. There is but one mode of transferring an interest in a school land certificate and that is by assignment, and it cannot be done by a separate conveyance by deed or mortgage. R. S., 1849, chapter 24, sections 19, 20, 22, 28, 24. *Mowry vs. Wood,* 12 Wis., 427. 2. There is no law requiring school land certificates or any conveyance relative to them to be recorded, and the record of a certificate, or conveyance thereof is not constructive notice. Registration does not operate as constructive notice unless the instrument is one which the law requires to be recorded. 2 Hilld. on Real prop.; 430, note B, and cases there cited; *Blood vs. Blood,* 23 Pick., 80 ; *Dervit vs. Moulton,* 5 Shep., 418. 3. A recorded mortgage on lands described in a school land certificate, the certificate not being assigned and recorded, is not constructive notice to a subsequent purchaser. The law requires the certificate to be presented before a patent shall be issued, and there is no provision of law, for issuing a patent except to the person who presents the certificate, and when the patent has been issued in conformity to law, as in this case it was to *Keyes,* his grantees cannot be required to look behind the patent, but had a right to rest secure in the belief that the title had passed to him. They were not required to search the records back, to see if some one formerly owning the certificate had not put a mortgage or some conveyance of the same lands on record. 4. Where a person mortgages lands which he holds under a bond for a deed, he conveys thereby no legal interest in the

bond, but only an equitable interest, and the registry of such mortgage is notice to no one. *Wing vs. McDonnell,* Walk. Ch., 175; *Farmers Trust Company vs. Maltby,* 8 Paige Ch., 361.

*Wakeleys & Vilas,* for the respondent, relied upon the case of *Dodge vs. Silverthorn,* 12 Wis., 644, and contended that who ever the patentee of the state was, the legal title inured to the benefit of the real and equitable owner, and where a patent is obtained by any fraud, the patentee is held to be a trustee for the rightful owner, and may be compelled by the court to convey to him, or adjudged to hold the land in trust for him. *Hayward vs. Ormsbee,* 11 Wis., 3; *Landes vs. Brant,* 10 How. U. S., 372; *Isaacs vs. Steele,* 3 Scam., 97; *Rogers vs. Bent,* 5 Gil., 573; *Ballance vs. McFadden,* 12 Ill., 324; *United States vs. Hughes,* 11 How., 552; *Thredgill vs. Pintard,* 12 How., 24; *Garland vs. Wynn,* 20 How., 6; *Lytle vs. Arkansas,* 22 How., 203; *Jackson vs. Williams,* 10 Ohio, 69.

*By the Court,* DIXON, C. J. This case is not distinguishable from *Dodge vs. Silverthorn,* 12 Wis., 644. The only difference in point of fact, and that not material, is, that there the action was against the patentee and others, to foreclose the equitable mortgage, after the emanation of the patent. Here the mortgage was foreclosed before the patent was issued, and the plaintiff, the purchaser at the foreclosure sale, seeks to subject the legal estate conveyed by the patent to the equitable, acquired by virtue of the mortgage. It is obvious that the substantial rights of the parties are the same in both cases.

School land certificates and assignments thereof may be acknowledged and recorded in the same manner that deeds of conveyance are authorized to be recorded. R. S., ch. 28, sec. 53; R. S., 1849, ch. 24, sec. 52. The object of this provision is very apparent. It was to enable the purchaser and his assignees to spread the evidence of their equitable rights upon the public records of the county, and make it notice to all the world, to authorize them, in short, subject to the conditions

contained in the certificate and imposed by law, to deal with the estate as if they were seized of the fee. No other motive can be assigned for the provision, and unless we can conclude with the counsel, that it was a mere mistake on the part of the legislature, enacted without any motives, or the very frivolous one to enhance the fees of the commissioners, which we cannot; we must adhere to *Dodge vs. Silverthorn*, and hold the certificate, deed, mortgage, and subsequent deed by the sheriff, to constitute a perfect claim of title of record to the plaintiff, of the entire equitable estate conveyed to the first purchaser, and that *Keyes*, the patentee and the claimants under him, were bound to take notice of it.

But it is furthermore insisted, that the recording of an equitable mortgage is unauthorized, and hence no notice. The statute in force at the time of these transactions and now found as chap. 87, of the Revised Statutes, settles the question. " All bonds, contracts or agreements concerning any interest in lands in this state, made in writing, under seal, attested by one or more witnesses, and acknowledged before some person authorized by law to take acknowlegments of deeds, may be recorded in the office of the register deeds of the county where the lands lie." " It shall be the duty of the register of deeds in each county within this state, to receive and record at length all such bonds, contracts or agreements as shall be left with him for that purpose. Each and every bond, contract or agreement, made and recorded according to the provisions of the first section of this chapter, shall be notice to, and take precedence of any subsequent purchasers, and shall operate as a lien upon the lands therein described according to its import and meaning."

It cannot be maintained that a mortgage of an equitable estate, executed in the manner prescribed, is not *an agreement concerning an interest in lands.* The nature or extent of the interest is immaterial; the language of the statute is *any* interest. *Parkist vs. Alexander*, 1 Johns. Ch., 394, presented an an-

alogous question, and the opinion of Chancellor KENT is of great weight. The statute spoke of any " *writing in the nature of a mortgage,*" and he considered that a mortgage of a mere equitable estate was within its operation, and the record notice to all persons. It appears that there was no such statute in New York or Michigan at the time of *Farmer's Loan & Trust Co. vs. Maltby*, 8 Paige, 361, and *Wing vs. McDonald*, Walker's Ch., 175. Those cases are therefore quite foreign to the question under ours.

These observations sufficiently answer the further position, that after the patent or conveyance by the commissioners, the purchaser need only look to that, and to subsequent alienations and incumbrances. He is bound to take notice of the source of his title, and of the regulations of law respecting it, and if it proceeds from a certificate, he must see to it that no transfer or incumbrance of the previous equitable estate has been made and recorded.

So too, of the certificate before patent. If it has been recorded, the purchaser must see that the estate in equity created by it, has not been conveyed or incumbered by deed or mortgage of record. If it has, if the equitable estate is gone, then, though he may obtain the legal title to the certificate, he acquires no valuable interest in the land. And if he afterwards procures a patent, his condition is no better. In either case he is a trustee of a mere naked trust, holding for the use of the equitable owner, in whom is the entire beneficial interest, subject to the payment of such sum as may have been advanced to the state of the purchase money. Such were the relations of *Keyes* at the time he took the assignment of the certificate, and when the patent was issued ; and the same is true of his grantees.

The use which counsel seek to make of the decision of this court, in *Mowry vs. Wood*, 12 Wis., 413, is quite unwarranted. Its effect is wholly misapprehended. Counsel seem to lose sight entirely of the distinction between the estate conveyed by the

certificate, and the certificate itself as written evidence of title, forgetting that the beneficial interest in the former, may be wholly or in part in one person, and the legal title of the latter in another. They confound the two, and seem to suppose them incapable of separation. If we were so unfortunate as not to speak intelligibly on that occasion, we hope to be more successful on this. We still think, however, that an attentive examination will show that the fault is with counsel, and not with us; that our views are expressed with moderate clearness and perspicuity, and that the case will appear quite consistent with *Dodge vs. Silverthorn.*

Recognizing the distinction between the estate conveyed, which is *equitable,* and the certificate itself, as an instrument of evidence, to which the owner may have a *legal title;* we endeavored to show that the latter, that is, *the legal title to the certificate,* could not be passed without an assignment in writing, as prescribed by the statute. With our conclusions in that respect, we are still well satisfied. But we no where said, nor is it to be implied, that the *estate* could not be transferred without such formula. On the other hand, we endeavored to show, both by reason and by authority, (but with what success it is not for us to say, further than that we still adhere to the opinion,) that the *deposit* of the certificates in that case, *without assignment,* was an equitable transfer of the estate, to secure the payment of a debt contracted by the owner; that it constituted an equitable mortgage, for two reasons: first, because the estate given in security was equitable; and secondly, because the certificates were not so assigned as to transfer them at law. It seems that there are two modes of creating an equitable mortgage ; the one depending on the form of the security, the other on the nature of the estate. At common law, an equitable mortgage of a legal estate, might be created by depositing the title deeds in pledge for the payment of a sum of money ; a legal mortgage, by a conveyance of the lands with a promise that such conveyance should be void on the payment of the

money and interest on a certain day. An equitable mortgage is also created when the estate granted is equitable, though by a conveyance in form legal. Such was the mortgage to Gardner and Lyon, under which the plaintiff claims. The only material difference between them pertains to the form of foreclosure. The latter is foreclosed in the ordinary method; but that by deposit of title deeds, must be by suit in equity to establish the lien, and for a sale in case the principal, interest and costs are not paid on a given day. If both causes occur, namely, the form of the security and the quality of the estate, as in *Mowry vs. Wood*, the mortgage is still equitable. The two decisions are not, therefore, at variance, since it does not follow because an equitable mortgage may be created by deposite of the certificate, that it cannot be by an independent conveyance.

As the estate may be mortgaged, so it may be conveyed absolutely by deed, the legal title to the certificate remaining in the grantor. The result would be, that the grantee would be without the remedies given by the statute to the purchaser and his assignees of the certificate. He could not maintain ejectment nor trespass, except perhaps for injuries committed while he was in actual possession. He could not obtain a patent; but must first resort to a court of equity to compel a transfer of the certificate. His condition, therefore, would be quite different, than if the certificate had been assigned in the manner provided by statute. At law he would have no rights, but must proceed in equity, in which alone such estates are recognized and protected.

Order affirmed.