Stone, J.
1. The act of February 22, 1831, to provide for the execution and recording of deeds, etc. (S. & C. 458), has reference to instruments by which lands, tenements, or hereditaments are “conveyed or otherwise affected or incumbered in law." All such instruments, executed with the prescribed formalities, are required to be recorded; and when so executed and recorded, are within the protection the statute was designed to afford. An executory contract for the purchase and sale of land is not an instrument of that character. It is a legal instrument, and forms the basis of legal as well as equitable remedies; but it does not convey, or purport to convey, or legally to incumber or affect any estate or interest in the land. The vendor, suing upon it, may recover the price of the land contracted to be sold, and he, failing on his part to perform it, may be compelled, at the suit of the purchaser, to respond in damages for his default. It constitutes also, in favor of the purchaser, a claim to the title to the land, which, in a proper case, may be specifically enforced through the agency of a court of equity. This right to compel a specific performance of the contract constitutes the purchaser’s equity in *308 the land, the vendor being, in equity as to the land, regarded as the trustee of the purchaser; but in either aspect, whether regarded as the basis of a legal or' equitable claim, the right of the purchaser rests in action, and the contract is therefore essentially a chose in action.
The deed of the purchaser purporting to be a legal conveyance of the land, and, as such, executed with the formalities required by the statute, would, of course, convey the equitable interest, and would doubtless be held to operate for all purposes as an assignment of the contract; but it is evident that such assignment may be as effectually made by an instrument no more formal in character than the contract itself. The deed, operating by way of estoppel, may also in certain cases have the effect to pass any larger interest or estate in the land which the grantor may afterward acquire; but the interest which he then has can not be enlarged by the form or character of the instrument by which it is conveyed.
It seems necessarily to follow that where, as in this case, such executory contract, or the mere equitable interest thereby created, is alone the subject of transfer, the recording act has no application. It will not be claimed that it has any application to the contract itself. The instrument by which the contract is assigned stands necessarily upon the same ground. By neither is the land, in law, conveyed, affected, or incumbered. Wing v. McDowell, Walker’s Ch. 175; Lewis v. Baird, 3 McLean, 56.
Several cases decided by courts of other states, are cited by counsel, which seem-to hold a contrary doctrine; but they all arose under statutes much broader in their scope than the act now under consideration. The statute in question in Jarvis v. Dutcher, 16 Wis. 307, provided for recording “all bonds, contracts, and agreements concerning any interest in lands.” In Bellas v. McCarty, 10 Watts, 13, the statute authorized the registry of all writings relating to laud, and was held to embrace both legal and equitable titles. In Parkist v. Alexander, 1 Johns. Ch. 397, Kent, J., delivering the opinion of the court, and speaking of the registry *309 act, under which that case arose, says: “ The statute speaks of any writing in the nature of a mortgage, and. those words may reach to any agreement creating an equitable incumbrance.” The cases of U. S. Ins. Co. v. Shriver, 3 Md. Ch. Decisions 383, and Ohio Life Ins. Co. v. Winn, 2 Ib. 25, followed Hayes v. Richardson, 1 Gill & Johns. 384; and in the last-named case, the court, speaking of the registry acta then in question, say: “ Their design was that all rights, incumbrances, or conveyances, touching, connected with, or in any wise concerning lands, should appear upon the public records.”
In Paine v. Mason, 7 Ohio St. 198, the recording act was held to apply as between successive mortgagees of a leasehold for the term of ten years, of which the mortgagor was in possession, under a lease which was defectively executed, not being witnessed or acknowledged as required by the first section of the recording act, and not, therefore, entitled to record.
As the statute expressly excludes from its operation leases for a term of not exceeding three years, the lease in that •case, being for the term of ten years, was clearly within the •statute. It was an instrument, therefore, which the statute required to be executed with the prescribed formalities and to be recorded.
It was not thus executed, but the lessee was in possession ¡according to its terms, and was, upon the facts stated, entitled in equity to such reformation of the lease as would make it, in all respects, a legal instrument. And, moreover, the subject-matter of the controversy in that case was the title of the lessee in the premises, and that alone. Both parties claimed under him by alleged legal mortgages, and no title superior to his, or other than that with which he was invested, was contracted for or acquired by either party, or was in any way involved.
In this case, it is true that Black, at the time plaintiffs obtained their mortgage, was in possession of the contracted premises; but he was not in possession in pursuance of any ¡stipulation of the contract. He had, under the contract, *310 the equitable right, upon payment of the purchase money, to call for the legal title, and this constituted his sole interest in the land. This right he transferred to the defendant by an assignment of the contract; and the defendant as such assignee, having paid the purchase money, and taken a conveyance from the railroad company, held the land by a title which may, or may not, be subjected to-an equitable charge in favor of the plaintiffs, but which no mortgage or conveyance by Black could, in law, incumber or affect.
2. If we are right in the conclusion already reached, the plaintiffs, as well as the defendant, are to be regarded as-the assignees of the equitable interest of Black, and, as such, they stood upon the same footing, with, at least, this-difference, that the assignment to defendant was prior in-time. The general rule in such cases is, that he who is first' in time is first in right, but this rule is not of universal application. In a contest between equities it is not allowed to prevail, where it appears from -any fact or circumstance in the ease, independent of priority of time, that the holder' of the junior equity has the better right to perfect his-equitable title or interest by calling in the outstanding legal estate. In such case he has the better equity. Prima facie, however, the assignee of an equity must abide the case of the assignor, and the superiority of the equity of the first purchaser is, in general, undeniable, unless he has been guilty of laches, which vitiate his title or deprive him of the right to enforce it against others who have been more-vigilant.
It is claimed, on behalf of the plaintiffs, that the defendant was guilty of such laches in failing to give notice to-the railroad company, the holder of the legal title, of the-tact that the contract had been assigned to him. But-whatever might have been the effect of the want of such, notice as between the defendant and a subsequent bona fide purchaser of the equity, who had himself exercised due-caution and care, we think the plaintiffs are not in a position to make that claim. Without such notice the title of *311 defendant was good as between bina and Black. The plaintiffs took their mortgage as security for a pre-existing debt, and not upon any new consideration. They had knowledge of the fact that Black claimed no interest in the land except under a contract of purchase between him and the railroad company, a duplicate copy of which they ascertained had been delivered to him, but which he was not able to produce. They made no inquiry of the railroad company, and were, therefore, not prejudiced by the company’s want of notice of the assignment to the defendant; and although they did, some six months afterward, make inquiry of the company, and give notice of their mortgage, they did not at any time pay, or offer to pay, the purchase money, the' great bulk of which remained unpaid, and was then long past due. They thus enabled the defendant, and made it necessary for him, in order to protect his interest, to pay the unpaid purchase money, and take a conveyance of the premises. This conveyance, notwithstanding its peculiar phraseology, invested the defendant with the paramount title of the railroad company, and gave him a legal advantage of which he can not, in equity, be deprived.
3. The deed was properly received in evidence. Being given in performance of the contract, the contract price was rightly stated as the consideration. As a deed given upon such consideration it was duly stamped, and it therefore becomes unnecessary to consider any further question upon this subject which might otherwise arise.
Judgment affirmed.'