## FALKNER v. JONES AND LEITH.

1. Under the statute which allows landlords to defend ejectment suits, it is not necessary the technical relation of landlord and tenant should exist. The act extends to all persons claiming title consistently with the possession of the occupier.

2. Any one having the title under which the tenant in possession holds, and who is entitled to an immediate. right of entry against him, must be allowed to defend as his landlord, although the ejectment suit is by the purchaser of the tenant's title at a sheriff's sale.

3. The assignment of a land certificate, made by the original purchaser, under his hand and seal, operates under our statute as a conveyance of all the assignor's interest in the land, and the assignee has a superior title at law, to a purchaser at a sheriff's sale under a judgment rendered subsequent to the assignment.

4. Such an assignment is not within the registration acts, and does not become inoperative against the sheriff's vendee for the omission to register it.

5. An assignment of a certificate not under seal, does not pass the legal title, and is not proper evidence in an ejectment suit by a sheriff's vendee. The improper admission of merely cumulative evidence is sufficient to reverse a judgment.

Writ of Error to the Circuit Court of Cherokee.

TRESPASS to try titles to a certain tract of land, commenced by Falkner against Leith.

Jones was permitted by the court to.defend as landlord of

Leith, to which the plaintiff objected—1. Because there was no proof of this relation. 2. Because the plaintiff was the purchaser of Leith's title at a sheriff's sale. Both grounds for the objection were admitted to exist, but notwithstanding Jones was admitted to defend.

At the trial, the plaintiff claimed as the purchaser at sheriff's sale, on the 6th March, 1843, under a judgment obtained in the circuit court of Cherokee, against Leith, on the 11th October, 1842. He proved that Leith entered the land previous to the judgment, and was in possession from 1833 until February, 1844, and had made valuable improvements. The suit was commenced 20th September, 1843.

The defendants exhibited and proved a title as follows:

1. The receipt of the receiver of the proper land office, for the land in question, issued to Leith the 4th October, 1842, on which was indorsed an assignment, under the hand and seal of Leith, of the same date, in these words: "For value received, I assign the within certificate to Moses Jones, and hereby authorize the patent to the within described land to issue in his name. Witness my hand and seal, &c. Transferred in due form by James Leith to Moses Jones, 4th October, 1842.          J. T. BRADFORD, Register."

2. An assignment also indorsed on the same certificate purporting to convey all Leith's right, title and claim to the particular tract of land. This is of the same date as the other, but is not under the seal of Leith, although signed by him, and being acknowledged before the same officer.

3. A copy of the last named transfer, under the certificate, of the commissioner of the general land office, and under the seal of that bureau, stating it as a copy of the original on file in that office. This was offered in evidence without any proof of its execution, or of the loss or absence of the original, and without any preliminary proof whatever.

4. A patent from the United States to Jones, as the assignee of Leith, bearing date 1 May, 1845. This was offered to show, that the inchoate, legal title had been perfetced.

The plaintiff objected to the introduction of each part of this evidence, but the court allowed it.

One of the plaintiff's witnesses was asked by the defendants, if Jones had not paid off the judgment under which the land was sold. The plaintiff objected to this question, but the court allowed it to be answered, and the witness said the balance not produced by the sale of the land was paid by Jones, under a judgment obtained by the plaintiff under garnishee process, on the 10th of April, 1845. This was all the evidence.

The plaintiff asked the court to exclude from the jury each paper given in evidence by the defendants. This was refused.

The plaintiff asked the court to charge the jury—

1. That if they believed all the evidence, they should find for the plaintiff.

2. That Jones being permitted to defend as the landlord of Leith, can set up no defence in this action which Leith could not; and that Leith was estopped from denying the title of plaintiff in this suit.

3. That as it is not allowable for a defendant in execution to defeat the purchaser at the execution sale, by showing he held under another, so his landlord when let in to defend, can show no title or right inconsistent with the possession sought to be recovered in this case.

4. That if they believed the defendant, Leith, was in possession at the time of the rendition of the judgment, and so remained until after the sheriff's sale, then the plaintiff is entitled to recover, although the legal title to the land was in Jones at the time of the judgment.

5. That if the plaintiff purchased the land at sheriff's sale, without notice of Jones' claim of title, the assignment of the receiver's receipt was void as against the plaintiff, unless it was recorded in the office of the clerk of the county court of the proper county.

6. That the assignment of the receiver's receipt as first above stated, did not convey the legal interest to the land.

All these charges were refused, and the plaintiff excepted to all the several rulings of the court against him.

The assignment of errors opens all the questions raised on the record.

Falkner v. Jones and Leith.

S. F. Rice, for the plaintiff in error.

Parsons, contra.

GOLDTHWAITE, J.—1. The question at the outset of this case is, whether Jones was properly allowed to defend as landlord—it being admitted he did not stand in that technical relation to the other defendant—and the plaintiff claiming as a purchaser at sheriff's sale, of whatever interest Leith had in the premises. The plaintiff insists, the defendant under these circumstances is estopped from setting up any title whatever. We shall first consider whether the technical relation of landlord and tenant must exist to let one claiming the title into the defence. Our statute of 1836, [Dig. 321, § 49,] is very general in its terms, and seems to have been intended to introduce the practice of the English courts in this respect. The act of parliament of the 11 Geo. 2, ch. 29. uses the term landlord in the same sense as our own statute, and the decisions under it are, that it extends not only to landlords properly so called, but also to all persons claiming title to the premises, consistently with the possession of the occupier, though no acts of ownership have been previously exercised by them. The question in all cases is, whether the party applying to defend as landlord, be himself interested in the event of the suit, or whether he be merely set in motion for the purposes of some other person. [Steph. N. P. 1443.] It is evident from this, that the nature of the title which the plaintiff claims, must to some extent influence the action of the court in admitting a party to defend as landlord; for instance, if in this case there was an unexpired tenancy in Leith, at the time of the application, and the plaintiff was willing to concede the ultimate title in Jones, the latter would have no interest to defend the suit.

2. But assuming the legal title to the land was in Jones by the assignment of the certificate, or that he claimed it to be so, then it is apparent Leith stood to him, or was conceded by those parties to stand to him, in the relation of a tenant at will, whose estate was determinable at pleasure.

In this relation, if our statute was out of the way, it is scarcely possible any court would allow a plaintiff in an ejectment suit, to obtain possession under the pretence that there

was an estate in the tenant, especially if before the execution of a *habere facias*, the party actually determined the estate by an entry or eviction. It is a general rule, that the judgment in an ejectment suit, binds only those who are parties and privies to it, and the decisions are numerous where courts have interposed to set aside writs of possession where one was disturbed whose possession was distinct from that of the parties to the proceedings. [Howard v. Kennedy's Ex. 4 Ala. Rep. 592, and cases there cited.] It cannot be contended at this day, that a suit against the tenant operates so as to deprive the landlord of his right of entry, on the determination of the tenancy, and there certainly is no reason to allow a plaintiff in ejectment to recover a mere naked possession, which he cannot legally hold for an hour, especially against one whose title he is estopped from disputing. It is very possible, the object of the English act of parliament, as well as our own statute, was intended to prevent this precise mischief. It is true, the decisions in the New York courts assert the rule broadly, that a defendant in execution cannot set up any title as against the purchaser at the sheriff's sale, but in this State the rule must be received with considerable qualification. The leading case of Jackson v. Graham, 3 Caines, 188, is not to be distinguished in its facts from this, but it was probably decided before the statute was passed in that State, allowing landlords to defend, and in the opinion it is expressly conceded, the vendee of the defendant in execution, holding his conveyance anterior to the judgment, could enter upon and have his action against the purchaser at the sheriff's sale, the next hour after he came into possession, and that the latter would be estopped to deny his title. If this be a correct exposition of the law, there would be two useless suits—first of the purchaser at sheriff's sale against the debtor—then of the debtor's vendee; and only in the third ejectment suit would there be any investigation of the title as between the purchaser at the sheriff's sale and the previous vendee of the debtor. Certainly such circuity of action should be avoided if possible. The rule may be true in the absence of the statute, that the defendant in execution cannot be allowed to defend against the sheriff's ven-

22

dee, as was held in Avent v. Read, 2 Porter, 480, but with the statute, we think any one having the title under which the tenant in possession holds the occupation, and who is entitled to an immediate right of entry against him, must be allowed to defend as landlord. The case of Davis v. McKinney, 5 Ala. Rep. 719, and Thompson v. Ives, at the present term, are in perfect harmony with the course of practice under the English statute, and sustain the conclusion now attained.

3. Having ascertained there was no error in allowing Jones to defend the suit, we shall inquire whether his title is preferable to that acquired by the plaintiff under the sheriff's sale. In doing this, we need not examine his title, as it is considered to be the settled law in this State, that the title acquired by the entry of lands, although incomplete, is yet a legal title, and as such subject to sale under a judgment at law, Goodlet v. Smithson, 5 Porter, 245; Rosser v. Bradford, 9 Ib. 354.] It will be seen that both the assignments of the certificate were executed some days before the lien of the judgment was operative, and therefore the only question on the merits is, whether these, or either of them, operated as a legal conveyance of the title. The only difference between the two is, that one has a seal, and the other has none, and the one with a seal transfers the certificate, whilst the other purports to convey the land. We have a statute, passed in 1812, which provides, " that all certificates issued in pursuance of any act of Congress, by any of the boards of commissioners, register of a land office, or any other person duly authorized to issue such certificate, upon any warrant of survey, or to any donation or pre-emption claimant for any lands in this State, shall be taken and received as vesting a full, complete and legal title in the person in whose favor the said certificate is granted to the lands therein mentioned, and his, or her, or their assigns, so far as to enable the holder of such certificate to maintain any action thereon, and the same shall be received in evidence in any court in this State.— [Dig. 341, § 157.] In Bullock v. Wilson, 2 Porter, 436, this statute was considered as covering a receiver's certificate of the entry of lands, but no question was raised as to the mode of assignment. In Masters v. Eastes, 3 Porter, 368, it was

held, the assignment of a certificate not under seal, was insufficient to protect the assignee against a suit by the assignor, to whom the patent subsequently issued, though it was conceded a deed conveying the land would be an effectual defence.   In Ansley v. Nolan, 6 Porter, 379, we considered an unsealed transfer of the land, written on the certificate, as insufficient to convey the legal title so as to enable the transferee to sustain an action for the land.   Conceding that these decisions establish that the assignee of the land, or of the certificate, must be one constituted by a sealed instrument, it is evident one of the transfers here is of that dignity, and the only question is, whether the assignment of the *certificate* is the transfer of the *land* named in it.   Whatever might be the conclusion, if the statute just quoted was out of the way, we think the construction of that is, that the title to the land passes by an assignment under seal of the certificate.   It will be seen it is the *holder* of the certificate who is invested with the capacity to maintain a suit, and although upon common law principles, the conveyance of the land might produce the same result, yet we think it impossible to avoid the conclusion, that the legislature intended by this enactment to make an assignment of the certificate equivalent to a conveyance of the lands.   It is also to be observed in this connection, that the practice of the land office, from a very early date, has been, to recognize assignments even less technical than this court has held to be valid, and patents daily issue to assignees of the certificate, under the hand of the original purchaser.   [See Land Laws, part 2, 307; Act of Con. 10 May, 1800, § 7; Act of 23 Jan. 1832, Land Laws, P. 1, 492.]   We come to the conclusion therefore, that the transfer of the certificate, under the seal of the assignor, was a valid conveyance of the assignor's interest in the land.

4. The remaining question to be determined is, whether this assignment is inoperative for the omission to register it. It is in view of this question, that we have omitted to place this decision on the ground that the assignment, independent of the statute we have referred to, was operative as a conveyance. If regarded merely as a conveyance of the land according to common law principles, it might be difficult to say it was

not within the registration laws; but looking to the statute and the acts of Congress, which evidently point to the assignment of the *certificate*, it is impossible to imagine, it was intended these inchoate titles, or their assignments other than by the ordinary modes of conveyance should be registered. The point is certainly not without difficulty, but with the practice of the land office, known and acted on for a great length of time, to grant the patent to the assignee, we think the law is, that the assignment of the land office certificate, by a valid instrument, will prevent the title for the land from passing to a subsequent purchaser, under a sheriff's sale. We limit our opinion to the precise case before us, because it is impossible to examine these questions without being aware of the necessity for the utmost caution.

5. Without particularly examing all the other questions raised by the bill of exceptions, it is only important to say, that the other evidence of title was improperly admitted. We speak now with reference to the conveyance of the land which is without seal. This at least only showed an equitable title in the assignee, which did not enable him to defend this suit at law. Although this, and possibly too, all the other evidence for the defendant was entirely unnecessary, yet as it was improperly admitted, the judgment must be reversed. We understand the rule to be, that the admission of testimony irregularly, although it is merely cumulative, is sufficient to reverse a judgment.

Reversed and remanded.