| 32 | 451 |
| 137 | 620 |

# FASH *vs.* RAVESIES.

[BILL IN EQUITY TO QUIET TITLES AND ENJOIN ACTION AT LAW.]

1. *When purchaser at sheriff's sale will be protected against unrecorded deed of trust.* If a judgment creditor, not having actual notice of a deed of trust not duly recorded, becomes the purchaser at the sheriff's sale under his own judgment, he is entitled to protection as a purchaser without notice, although the deed of trust had been recorded before the sale under execution.

2. *Equitable mortgage not required to be recorded.*—The act of 1828, (Clay's Digest, 255, § 5,) requiring the registration of "all deeds and conveyances" of real or personal property in trust to secure debts, does not include an agreement, not under seal, by which an incorporated railroad company, in consideration of an engagement by the other party to act as its agents in the purchase and shipment of iron, "pledges the real and personal estate of said company" to secure the said agents.

3. *Constructive notice of pending suit.*—A purchaser at sheriff's sale, pending a suit in chancery respecting the property, is chargeable with constructive notice of the equity asserted by the bill.

4. *Conflicting equities between purchasers.*—A party having a junior equity, who purchases the legal title, cannot thereby defeat or postpone the senior equity : the maxim applies, *qui prior in tempore est potior in jure.*

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. WADE KEYES.

THIS bill was filed by Frederic Ravesies against Leonard Fash, and sought to quiet the plaintiff's title to a tract of land of which he was in possession, and to perpetually enjoin the defendant from suing at law for its recovery. The plaintiff claimed the land under a deed from Thomas A. Hamilton, who purchased at a sale under a decree of the chancery court on the 2d June, 1851; while the defendant derived title under a purchase at sheriff's sale in October, 1845. The sheriff's sale was made under an execution issued on a judgment, which the defendant recovered against the Mobile and Cedar-Point Railroad Company on the 17th December, 1841. The decree in chancery, under which the sale was made at which Hamilton purchased, was rendered on the 7th April, 1851; the bill having been filed on the 30th March, 1843. That suit was instituted by A. & G. Ralston against said railroad

company, and sought to foreclose an equitable mortgage on the real and personal property of the company, which included the land now in controversy. This mortgage was dated at Philadelphia, on the 31st August, 1836, and was in these words:

"Articles of agreement, made and entered into between J. B. Moore, engineer of the Mobile and Cedar-Point Railroad Company, of the one part, and A. & G. Ralston, of the city of Philadelphia, witness: That the said A. & G. Ralston, as agents of said Mobile and Cedar-Point Railroad Company, agree on their part to advance the money, purchase in England at the lowest cash price, and ship in merchantable vessels for the said railroad company, one hundred and sixty and a half tons" of railroad iron, (which is particularly described;) "the iron to be shipped so as to arrive, if practicable, by the 1st April, 1837, or as much sooner as practicable. The said agents further agree, that they will cause the said iron to be inspected in England by a competent engineer, at an expense not to exceed sixpence sterling per ton, to be paid by said company; and will cause insurance to be effected, so as to cover the first cost and charges. The said Mobile and Cedar-Point Railroad Company agrees to pay to their said agents, A. & G. Ralston, or their order, in cash in Philadelphia, or equivalent thereto at the rate of exchange on London at which the United States Bank at Philadelphia may then be drawing, upon the arrival of the iron at Mobile," &c.,. "together with a commission of five per cent. on the amount of the invoices and charges for purchasing and shipping said iron. For the faithful performance of this contract on the part of the said Mobile and Cedar-Point Railroad Company, the said J. B. Moore, engineer of said company, pledges the real and personal estate of said company, as authorized to do by the instructions of F. Ravesies, president, A. D. Durand, secretary, and A. C. Hollinger, treasurer, committee appointed on the 16th July, A. D. 1836, to purchase the materials for said road, as per documents annexed."

"J. B. MOORE, [L. S.]
"A. & G. RALSTON, [L. S.]"

On final hearing, the chancellor rendered a decree for the complainant, perpetuating the injunction; and his decree is now assigned as error.

E. S. DARGAN, for the appellant.

GEO. N. STEWART, and P. HAMILTON, *contra.*

WALKER, J.—The Mobile and Cedar-Point Railroad Company, in 1836, made an equitable mortgage on its real and personal property to A. & G. Ralston. The appellant, Fash, subsequently became a creditor of the company, and recovered judgment against it. Afterwards, a bill in chancery was filed, for the sale of certain lands under the equitable mortgage of A. & G. Ralston. Pending the suit in chancery thus instituted, Fash, at a sale under execution issued upon his judgment, bought the lands sought to be sold by the chancery suit for the satisfaction of the equitable mortgage. Subsequently, the chancery court rendered a decree, for the sale of the land; a sale was made by the register, and Hamilton purchased. Hamilton then sold to the complainant, who went into possession; Fash never having taken possession under his purchase. The question is, which obtained the better title—the purchaser at the sheriff's sale, or the purchaser at the register's sale?

[1.] The equitable mortgage of the Ralstons was registered more than sixty days after its execution. Fash is not shown to have had notice of the equitable mortgage until the institution of the suit in chancery. His judgment was rendered before the commencement of that suit. Having obtained a lien without notice, although his subsequent purchase was made with notice, he would be protected against a prior unregistered deed or conveyance of real and personal property in trust to secure the payment of debts, which is required to be recorded by the act of 1828.—Clay's Digest, 255, § 5; De Vendell v. Hamilton, 27 Ala. 156; Jordan v. Mead, 12 Ala. 247; Wallis v. Rhea & Ross, 12 Ala. 646; Daniel v. Sorrells, 9 Ala. 436; Ohio Life Ins. and Trust Co. v. Ledyard, 8 Ala. 873.

The protection of the judgment creditor, in such a case,

is afforded, because the statute declares the specified con-
veyances, when not recorded within the prescribed period,
*void against creditors*, without notice; and the term "credit-
ors" is construed to mean creditors with a lien.—See the
authorities cited above.

The statute of 1828 has been uniformly treated as a
statute for the prevention of frauds, and the conveyances
embraced by it have been excluded from the operation of
the act which gives effect to deeds recorded after the pre-
scribed time from the date of their registration. If the
equitable mortgage in this case is embraced in the act of
1828, its registration after the expiration of the time pre-
scribed in that act would avail nothing.—Cummings &
Cooper v. McCullough, 5 Ala. 329; Wallis v. Rhea &
Ross, 12 Ala. 646; Smith & Co. v. Zurcher, 9 Ala. 209.

Furthermore, as Fash obtained his judgment without
notice of the equitable mortgage, and as that mortgage
was not recorded within the time prescribed by the act of
1828, the title obtained by purchase at the sheriff's sale
must be protected against the equitable mortgage, if it be
one of the instruments required to be recorded.

[2.] But we decide, that the contract between the Mo-
bile and Cedar-Point Railroad Company, through its rep-
resentative, Moore, is not one of the instruments required
to be recorded by the act of 1828. That contract has
been construed by this court in the case of the M. & C. P.
R. R. Co. v. Talman & Ralston, 15 Ala. 472; and it was
held in that case to have the effect of an equitable mort-
gage. We adopt the construction placed upon the con-
tract in that case. Notwithstanding the contract creates
an equitable mortgage, it does not follow that it falls within
the registry act of 1828.

The statute requires the registration of deeds and con-
veyances in trust to secure any debt or debts. The
instrument in this case is not embraced by the act, unless
it can be denominated a deed or conveyance. It is not a
deed, because it is not under seal. Is it a conveyance?
It simply pledges the real and personal estate of the com-
pany for the faithful performance of the contract on its
part. The word *pledge*, as decided by this court in the

case above referred to, must not be understood in a technical sense. It must receive such a construction as to charge the real and personal estate of the company with a lien in equity in favor of the Ralstons. The contract, then, really amounts to nothing more, than a charge of the estate with a lien which may be enforced in a court of equity. - There is no conveyance, either legal or equitable, to the Ralstons. There is no transfer of legal or equitable title to them. They could not, like a mortgagee, sue for and recover the property in any tribunal. As well might it be said that the vendor's lien, or any other lien or charge, which may be enforced in equity, comes within the registration laws. In New York, it is possible a different rule might prevail; because in that State " any writing in the nature of a mortgage " is required to be recorded; and it is in reference to that statute that the decision in Parkist v. Alexander, 1 Johns. Ch. 394, is made.—Morgan v. Morgan, 3 Stewart, 385; Wing v. McDowell, Walker's Ch. R. (Mich.) 175; Falkner v. Jones, 12 Ala. 165; Bryan v. Smith, 22 Ala. 638; Stewart v. Kirkland, 19 Ala. 162; McCain v. Wood, 4 Ala. 263.

[3–4.] Fash, having purchased pending the chancery suit in which the equity of Ralston was set up, had constructive notice of that equity. The *lis pendens* was notice to him. Whatever equity he may have had, was junior to that of A. & G. Ralston; and the purchase of the legal title with notice will not defeat the senior equity. As between the two equities, the maxim *qui prior est in tempore potior est in jure* applies, and a court of chancery " will not permit the party having the subsequent equity to protect himself by obtaining a conveyance of the legal title, after he has either actual or constructive notice of the prior equity."—Grimstone v. Carter, 3 Paige, 421; Wing v. McDowell, *supra;* Hale v. Stone, 17 Ala. 557; 1 Story's Equity, §§ 395, 396, 397, 64 *a;* 2 Sugden on Vendors, 269. See the case of Snetz & Hewett v. Donnell, in manuscript, where this point is decided.

The legal title of Fash, obtained with notice of the prior equity, was subordinate to it; and, although older, is subordinate to the legal title of the purchaser at the

chancery sale, for he is armed with the equity of the complainants in the chancery suit.

We have passed by, without considering, what right. the complainant derived through the mortgage assigned to Talman, which was foreclosed in the same suit with Ralstons' equitable mortgage. The Talman mortgage covered only a portion of the land in controversy. It is unnecessary to refer to it, because we find the complainant entitled to all the relief sought, on account of the title derived through the equity of A. & G. Ralston, which includes the entire property.

The provisions of the Code in reference to registration do not apply, and of course the case has been decided without reference to them.

The decree of the court below is affirmed.