## Pierce & Morrison *v.* Jackson.

### Statutory Action of Detinue for Bales of Cotton.

1. *Articles of partnership construed as "conveyance to secure a debt," under registration statutes.*—A stipulation, in written articles of partnership for the cultivation of a plantation for a term of years, that one of the partners, to whom the land belonged, and who had sold to the other a half interest in the mules, farming implements, &c., taking his notes for the agreed price, "shall have a lien upon the produce of said farm, and upon the stock and mules on said farm, to secure the payment of the said notes," and that he is "authorized to control the crops grown on said farm exclusively, and to sell the cotton," makes the instrument a "conveyance to secure a debt" (Rev. Code, § 1561), and authorizes its registration; and being properly acknowledged, certified, and recorded, it is admissible in evidence without further proof of its execution.

2. *Objection to evidence admissible for particular purpose only.*—A motion to exclude evidence, not specifying any particular ground of objection, may be overruled, if the evidence is admissible for any purpose whatever : the party objecting should ask a charge limiting its effect.

3. *Who may maintain action.*—A partner who, by express stipulation in the articles of partnership (for the cultivation of a farm for a term of years), has "a lien on the produce of the said farm, and upon the stock and mules on said farm, to secure the payment of" his co-partner's notes for a half interest in them, and is authorized "to control the crops grown on said farm exclusively, and to sell the cotton," may maintain an action of detinue for the cotton in his own name.

4. *Charge ignoring material question of fact.*—Where the plaintiff's right of recovery depends on several questions of fact, to be determined by a consideration of oral evidence, a charge which bases his right of recovery on one of these facts only, ignoring or disregarding the others, is erroneous.

APPEAL from the City Court of Montgomery.
Tried before the Hon. JOHN A. MINNIS.

This action was brought by W. S. Jackson, against Pierce & Morrison (or Pierce, Morrison & Co., as the name is indifferently written in the transcript), to recover six bales of cotton, the marks of which were particularly described, together with damages for their detention; and was commenced on the 20th January, 1871. The defendants pleaded "the general issue," and issue was joined on that plea. On the trial, as the bill of exceptions states, the plaintiff introduced in evidence "a paper writing, in words and figures as follows":

"State of Alabama, ⎱  This agreement, made and entered
   Bullock county.  ⎰ into this 7th day of January, 1870,

[Pierce & Morrison v. Jackson.]

between W. S. Jackson and R. S. Appleby, witnesseth, that the said W. S. Jackson has this day sold to the said R. S. Appleby one half interest in the following personal property;" specifying eight mules, three horses, thirty head of cattle, hogs, sheep, wagons, corn, fodder, &c.; "all now on the farm of said Jackson, and valued at $3,598, at and for the sum of $1,587.50; and has received from the said Appleby, in part payment of said interest, one half interest in one wagon," &c., "valued at $423, at and for the sum of $211.50; and to secure the remainder of said sum, has taken the said Appleby's two promissory notes, each dated this day, and payable in the sum of $793.75 each; one due at twelve months, and the other on the 6th January, 1872, with interest from the 1st January next. This agreement further shows, that the said Appleby and Jackson farm together, on the farm of the said Jackson, in this county, for five years next ensuing, on the following terms: The said Appleby agrees, on his part, to endeavor to procure the necessary hands, and to give his undivided attention and superintendence to the cultivation of said farm, and to use the personal property hereinbefore described in the cultivation of said farm. The said Jackson agrees to furnish the said plantation, or farming lands. The annual expenses of running said farm are first to be paid out of the proceeds of said crops grown thereon, and the balance to be equally divided. This agreement shall cease, during said term, only in the event the said Jackson shall sell said lands, and shall also give notice of the same on the 15th December of the year in which a sale shall be made, and also pay to the said Appleby $300. The said Appleby shall have the right to use, for his family consumption, any of the corn, meat, or potatoes raised on said farm, free of charge. The said Jackson shall have a lien upon the produce of said farm, and upon the stock and mules on said farm, to secure the payment of the notes hereinbefore described; and it is herein and hereby declared that such lien is hereby created. In the event of a separation, or termination of this contract at the close of the present year, as hereinbefore provided, losses from death of stock [are] to be borne equally, share and share alike; and then each [is] to receive back such articles as have been put into the general stock. And now, the better to secure the said Jackson in the premises, it is hereby stipulated that the said Jackson is hereby authorized to control the crops grown on said farm exclusively, and to sell the cotton. The said Appleby shall have the power to sell or trade three of the oldest mules, and five oxen, and shall account to the said Jackson for the same. In witness whereof," &c.

[Pierce & Morrison v. Jackson.]

This instrument was under seal, and was signed by said Jackson and Appleby; and attached to it, or indorsed on it, was the certificate of the probate judge, as to its acknowledgment before him by the parties on the day of its date, and its registration on the next day. "To the introduction, with this paper, of the certificate of record thereof, defendants objected; the court overruled the objection, and defendants excepted. The plaintiff was then examined as a witness in his own behalf, and testified, that he entered into an agreement with said Appleby about the latter part of the year 1869, the terms of which are set out in said written contract; that they operated a plantation in Bullock county, under said agreement, during the year 1870; that their enterprise was not successful, and the *concern* lost money; that in the fall of said year, after most of the crop was gathered, he one day carried into Union Springs three bales of the cotton raised on said plantation, and stored them in a warehouse in said town; that Appleby next day carried three more bales of said cotton into Union Springs, and stored them likewise, taking receipts for all the six bales, which receipts he gave to witness; that the first three bales were marked J. & A., and the last three were marked J. & A., with the addition of some other mark not recollected by him; that he found out soon afterwards that said Appleby, without his knowledge or consent, had shipped said six bales of cotton to Montgomery; that he (witness) then started for Montgomery, but missed the railroad train at Union Springs, and telegraphed to Lehman, Durr & Co., his commission merchants in Montgomery, to seize and hold the cotton; that he proceeded to Montgomery the next day, and saw Mr. Durr, of said Lehman, Durr & Co., who told him, that the cotton was 'all right,' and in the warehouse of the defendants, with whom it had been stored as warehouse-men; that Lehman, Durr & Co. afterwards sold the cotton for him, and paid the proceeds to him; that Lehman, Durr & Co. wrote to him, some time afterwards, that the cotton was falsely packed; that he then came to Montgomery, and went to the warehouse of the defendants, who pointed out to him six bales of cotton, as the six bales shipped to them by Appleby, and did not then set up any claim to said cotton, nor object to its being taken by witness; that they were only bailees of the cotton, saying that it was falsely packed. Witness said, that he did not remember how said bales were marked at that time; that there was something [?] about the marks; that they were not marked J. & A., but J. & A. were scratched out; that by these marks, and the general appearance of the cotton, he knew that the cotton was his, and is that

which is now sued for. Witness testified, also, that there was nothing due to said Appleby on a settlement of their partnership affairs; that when they broke up, each took the personal property he had put in; and that said Appleby, when witness last heard of him, was in Monroe county, and had never laid any claim to the cotton.

"This being all the evidence, the court charged the jury, among other things, 'that under this written instrument, except as to a *bona fide* purchaser without notice, the plaintiff had the exclusive right to control and sell the cotton, if they find from the proof that there was nothing coming to Appleby, and that the cotton was raised on the plantation cultivated by Jackson and Appleby that year, and Jackson has a right to maintain this action.' To this charge defendants excepted. The court charged the jury, also: 'If you find, from the evidence, that these six bales of cotton were raised on the Jackson plantation, you will find for the plaintiff.' To this charge, also, defendants excepted."

These charges are now assigned as error, together with the refusal of several charges asked by the defendants, and the "admitting in evidence the articles of partnership (or agreement) between Jackson and Appleby, and the certificate of the registration thereof."

BLAKEY & FERGUSON, for appellants.

SAYRE & GRAVES, *contra*.

STONE, J.—The paper offered in evidence in this case is more than an agreement of partnership, or joint adventure. It gives to Jackson "a lien on the produce of said farm, and upon the stock and mules on said farm," to secure the payment of Appleby's notes given for part purchase of the property. A further stipulation is, that Jackson "is authorized to control the crops grown on said farm, exclusively, and to sell the cotton." These features of the agreement constitute it a "conveyance to secure a debt," and authorized its registration; and being duly acknowledged, certified, and recorded according to law, it was admissible in evidence, without further proof of its execution.—Rev. Code, §§ 1543, 1548, 1554, 1561.

2. The contract being evidence for one purpose, the City Court did not err in receiving it in evidence.—1 Brick. Dig. 810, §§ 98, 99.

3. The contract, giving to Jackson the exclusive right to control and sell the cotton, in effect arms him with the right and power of a mortgagee; and he may maintain an action

[Keller v. Holland's Adm'r.]

in his own name for recovery of the cotton. Less than this would not give him control, or the power to effect a sale. A right to the present possession of personal chattels will support an action of detinue.—1 Brick. Dig. 572, §§ 7, 8, 9, 10, 17, 19.

4. With the exception of the written contract, defining the several rights of Jackson and Appleby, all the testimony in this cause was oral. The right of plaintiff to recover was dependent on several questions of fact. Among these questions were the inquiries—first, whether the cotton in controversy was grown on the said Jackson plantation, after the making of the contract read in evidence; and, second, whether the cotton was in the possession of defendants when the suit was brought. Both these questions of fact it was necessary for the jury to find, before they could render a verdict in favor of plaintiff for the cotton. There should also have been proof of value, before the jury would be authorized to assess the alternate value of the cotton. The record declares that it contains all the evidence, and there is nothing said about value. There is no point made, however, on the question of value. The court instructed the jury to find for the plaintiff, if they found, "from the evidence, that these six bales of cotton were raised on the Jackson plantation." This charge brought the investigations of the jury within too narrow a compass. The other material facts, dependent on oral proof, should also have been submitted to the jury.—1 Brick. Dig. 341, §§ 80, 85, 86; Rev. Code, § 2678.

For this error, the judgment of the City Court is reversed, and the cause remanded.