MARTIN v. ORGAIN.†

(Circuit Court of Appeals, Fifth Circuit. November 16, 1909.)

No. 1,908.

BANKRUPTCY (§ 191*)—LIENS—LIEN FOR RENT TO BECOME DUE.

    Where the landlord of a bankrupt had a lien on the property on the leased premises for "rent due and to become due" by the express terms of the lease and also by Sayles' Tex. Ann. Civ. St. 1897, art. 3251, for rent due and to become due for the current contract year, such lien is enforceable against the trustee in bankruptcy for rent to become due during the remainder of the contract year in which the bankruptcy occurs, and which has become due prior to the adjudication of the claim.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 290; Dec. Dig. § 191.*]

'Appeal from the District Court of the United States for the Northern District of Texas.

In the matter of E. H. Lowe Company, bankrupt. Julia Martin appeals from an order disallowing her claim to a lien. Reversed.

In the matter of E. H. Lowe Company the appellant filed before the referee the following claim:

"At Ft. Worth, in said district of Texas, on the 17th day of July, A. D. 1908, came Julia Martin of Ft. Worth, in the county of Tarrant, in said district of Texas, and made oath and says:

"That E. H. Lowe Company, a corporation, against which a petition for adjudication of bankruptcy had been filed and which has heretofore been adjudged bankrupt, was at and before the filing of said petition, and still is, justly and truly indebted to said deponent for a sum of money representing the rents due and to become due for that portion of the current contract year according to the terms of a certain lease made by deponent to and with said bankrupt, extending from the first day of January, A. D. 1908, to the first day of September, A. D. 1908. That the total amount of said indebtedness for said period is the sum of thirty-eight hundred, fifty-six and 18/100 dollars ($3,856.18), as shown by the statement of account hereto attached marked 'Exhibit A' and made part of this proof; that no part of said debt has been paid except the sum of eighteen hundred, fifty-eight and 78/100 dollars ($1,858.78), as shown by the items credited on said attached account; that the consideration of said debt is rents due and to become due as aforesaid; that there are no offsets or counterclaims to said indebtedness except as set forth in said attached account, and that the balance after allowing same is the sum of nineteen hundred, ninety-seven and 40/100 dollars ($1,997.40); that no note has been received for said indebtedness or any part thereof, and no judgment has been obtained for same; that the only security held by this deponent for said debt is a landlord's lien on the property of the said bankrupt on the premises let in said lease secured by the said contract of lease and by the statute law of the state of Texas, and that by agreement whatever rights in said bankruptcy deponent has under and by virtue of said lien extend to the funds in the hands of the trustee for said bankrupt derived from the sale of the property of said bankrupt on said leased premises at the time of said bankruptcy; that said claim is entitled by law to priority of payment out of the assets of said bankrupt in the hands of its trustee.           Julia Martin.

"Subscribed and sworn to before me this 17th day of July, A. D. 1908.
    "[Seal.]                                           N. G. Denison,
                "Notary Public in and for Tarrant County, Texas."

The trustee answered the said claim, in substance, charging that, as to the rent due after the adjudication in bankruptcy, it was not a provable claim, and he prayed that the same should not be allowed.

A hearing was had before the referee on an agreed statement of facts as follows:

"In the Matter of the E. H. Lowe Co.    No. 461, in Bankruptcy.

"In the matter of the claim of Mrs. Julia Martin against the estate of the bankrupt aforesaid for rents, the following facts are agreed to:

"The E. H. Lowe Company, a corporation, was adjudicated a bankrupt on the 9th day of March, 1908.

"That the contract of which the following is a copy, was duly executed and was in force at the date of said bankruptcy as an obligation of the said E. H. Lowe Company, it having acquired the rights of E. H. Lowe named in said contract as the original lessee.

"The stock in trade of the said bankrupt remained on the premises described in said contract of lessee as the property of said bankrupt estate from the date of said adjudication to and including the 9th day of April, 1908, the trustee in bankruptcy being in control of said premises from the date of his election to and including the said 9th day of April, 1908, when he sold the said stock in trade.

                        " 'Contract.

" 'State of Texas, County of Tarrant.

" 'This contract of lease made and entered into on this, the 14th day of September, 1906, by and between Julia Martin, an unmarried woman, of the

county of Tarrant and state of Texas, party of the first part, and E. H. Lowe, of said county of Tarrant, party of the second part, witnesseth:

" 'That said first party, in consideration of the rents, covenants, and agreements hereinafter contained and by said second party to be paid and performed, does hereby grant, demise and lease to said second party, the premises described as follows, to wit: lots one (1) and two (2) in block five (5), Hirschfield's addition to the city of Fort Worth, in Tarrant county, Texas, together with the improvements now on said lots.

" 'To have and to hold the same with the appurtenances thereunto belonging, unto the said party of the second part from the 15th day of September, 1906, to and including the 31st day of December, 1911, being a term of five years, three months and fifteen days, fully to be completed and ended on the 31st day of December, 1911, said lessee yielding and paying therefor the sum of twenty-two thousand, two hundred and twenty-five ($22,225) dollars, as hereinafter provided, and the further sum of all taxes of every character which shall be levied on or assessed against said property during said term, and the further sum of all premiums which shall be paid for insurance for said term on said property, as hereinafter provided, and the further sum for all moneys which shall be paid for repairs on the improvements on said premises during said term, as hereinafter provided.

" 'Provided, however, that if said rent, or any part thereof, shall remain unpaid for ten days after it shall become due and payable, as hereinafter set forth, or if said lessee shall fail to pay said taxes, or procure and pay for said insurance, or make and pay · for repairs, in manner as hereinafter agreed to be done, and default in any such case shall continue for ten days after notice thereof to said lessee given by said lessor or her agent or assigns; or if said lessee shall assign this lease or sublet said leased premises, or any part thereof, without the written consent of said lessor or her agent or assigns; or if said lessee's interest in this lease shall be taken or sold under execution or other legal process, then and in any of the events aforesaid, it shall be lawful for said lessor, her heirs or assigns, at their option, without further notice or demand, into said premises to reënter and the same to have again, repossess and enjoy, as in their first and former state, and thereupon this lease and everything therein contained on the part of said lessor to be done and performed shall cease, determine and become utterly void: provided, however, that it is contemplated by the said parties to this lease that the said lessee may associate with himself in a mercantile business in dry goods or similar lines, other person or persons, in a partnership relation with him, and the use and occupancy of said premises, under terms of this lease, by such firm or partnership of which the said lessee shall be an active member, shall not be deemed a violation of the above stated provision against assigning and subletting the said premises; and the occupancy and use of said premises by said lessee and his associates in business as aforesaid, shall subject said associates and members of said partnership or firm, and all their property in and on said leased premises, to the full terms, obligations and liabilities of and provided in this lease.

" 'Said lessee covenants and agrees with said lessor as follows: This is to say, said lessee will pay said money rent, to wit, the said sum of twenty-two thousand, two hundred and twenty-five ($22,225) dollars in instalments as follows: the sum of one hundred and seventy-five ($175) dollars on the 15th day of September, 1906, the sum of three hundred and fifty ($350) dollars on the first day of each and every month thereafter to and including the 1st day of December, 1911, and until the whole amount of twenty-two thousand, two hundred and twenty-five ($22,225) dollars shall have been paid.

" 'Said lessee further covenants and agrees that as part of the rents and consideration for said premises and lease, that said lessee will pay promptly from year to year, as the same become due and payable, all taxes levied on or assessed against said premises, for and during the full term of this lease, and will keep said premises during the full term of this lease, insured in first class insurance companies, in a sum of not less than twenty-

eight thousand ($28,000) dollars in the name and for the use and benefit of Julia Martin, the said lessor. or her heirs or assigns, as the case may be, and will promptly pay all premiums for said insurance when due; and will, during the full term of this lease, at the expense of the said lessee, have done and made promptly as occasion arises, the ordinary repairs on said premises and improvements necessary to keep same in as good condition as they now are, ordinary wear and tear excepted.

" 'Said lessee further agrees and covenants that if he should at any time fail or refuse to pay said taxes when due and payable, or to keep said property insured and pay premiums for said insurance as above stipulated, or to make said repairs as above stipulated. then and in that event, said lessor, her heirs or assigns, shall have the right at her or their option, to pay said taxes, procure said insurance on said property and pay premiums therefor, and make said repairs, or to do one or more of said things, and in the event she, or they, so do or act, then any and all money paid out by said lessor, her heirs or assigns, for any of said purposes, together with ten per cent. per annum interest on said money from date of payment of same, shall be and constitute a debt against said lessee, which he hereby promises to pay on demand, and until the same shall be paid it shall constitute a part of the unpaid rents for said premises and may be collected as such.

" 'And said lessee further covenants and agrees that he will not do or suffer any waste on said premises; that he will not assign this lease or sublet said premises, or any part thereof. without the written consent of said lessor, her heirs or assigns (subject to the right of said lessee to associate others with him in partnership relation in the occupancy of said premises for purposes and on terms as aforesaid) and at the end of said term said lessee will deliver up said premises in as good order and condition as they now are or may be put by said lessor. her heirs or assigns, reasonable use and ordinary wear and tear thereof. and damage by fire or other unavoidable casualty. excepted.

" 'Provided, however. that in the event said improvements be destroyed or rendered untenantable by fire or other extraordinary cause, and said lessee be thereby compelled to abandon said premises, this lease shall terminate. and said lessee shall thereupon be liable only for the rents, taxes, insurance premiums and repairs, earned, accrued or incurred to the time said lease shall so terminate.

" 'Provided. further, that if said improvements shall be partially injured from any cause, and are not thereby rendered substantially untenantable for said lessee, that said lessor. her heirs or assigns, shall have the option to at once repair same, and this lease shall in that event in all its provisions continue in full force, and if such injury is from such cause or of such nature as to be covered by the insurance in force for the protection of said improvements. then and in that event said lessor. her heirs or assigns, shall be required and obligated to make the repairs made necessary by said injury, the expense of such repairs, however, not to exceed in any event. the amount of the insurance money received for said injury by said lessor. her heirs or assigns.

" 'Said lessee further covenants and agrees that for the whole of said rents to be paid by said lessee, including any moneys paid by said lessor, her heirs or assigns, or owed by said lessee for taxes, insurance or repairs, as hereinabove provided for, a lien is hereby reserved and given upon said premises, the interest of said lessee in same, and all the property of said lessee in and upon said premises, in favor of said lessor, her heirs or assigns, prior and preferable to any and all other liens of whatsoever character thereupon.

" 'Said lessee hereby waives all notice to quit said premises which by law are required to be served upon him in the event any writ of ejectment or forcible detainer be brought, and agrees that no alteration shall be made in said premises or improvements without the written consent of said lessor, her heirs or assigns.

" 'Said lessor covenants and agrees for herself, her heirs and assigns, with said lessee, that said lessee paying the rents and charges hereinbefore stipulated for and observing and keeping the covenants of this lease on his be-

half to be kept, shall peacefully and quietly hold, occupy and enjoy said premises during said term without let, hindrance, ejection or molestation by said lessor, her heirs or assigns, or any other person or persons lawfully claiming or to claim the same or any part thereof.

" 'In witness whereof, the said parties have hereunto set their hands to this instrument in duplicate on the date first-above written.

    " '[Signed]             Julia Martin, Party of First Part.
                         " 'E. H. Lowe, Party of Second Part.

" 'State of Texas, County of Tarrant.

" 'Before the undersigned authority on this day personally appeared Mrs. Julia Martin, an unmarried woman, and E. H. Lowe, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

" 'Given under my hand and official seal at Fort Worth, Texas, this the 15th day of September, 1906.

           " 'W. Storer, Notary Public in and for Tarrant County, Texas.

" 'State of Texas, County of Tarrant.

" 'The sum agreed to be paid for rents, in the attached lease made by Julia Martin to E. H. Lowe, dated September 14, 1906, is, in consideration of certain expenditures made by said lessor, Julia Martin, on the said leased premises, increased in the sum of seven hundred and sixty-six and 76/100 dollars ($766.67), which said sum is to be added to the sum stipulated for rents in said lease, and is to be paid in monthly instalments, on the rent day fixed in said lease, of thirteen and 22/100 dollars ($13.22) each, and all the terms, provisions and obligations of said lease in favor of the lessor therein with reference to the payments of rents and the lien and security for same, are expressly agreed to extend to and cover this the said additional sum agreed to be paid for rents as aforesaid.

" 'Witness our hands this 1st day of March, 1907.

                      " 'Mrs. Julia Martin,
                      " 'Earle H. Lowe,
                      " 'E. H. Lowe Company,
                      " 'By W. T. Potter, President.'

"That the bankruptcy corporation has paid the amounts due by it to Mrs. Julia Martin to the 1st day of January, 1908, and that it paid to Mrs. Martin the amounts due as the money rents for the months of January and February, 1908, to wit, the sum of $726.44.

"That the trustee of the bankrupt concern paid to Mrs. Julia Martin $625.26 for the use of the premises during the time which he occupied them as such trustee.

"That the trustee rejected the contract of lease so far as under the law he was authorized and empowered to do so, and notified the lessor that the estate of the said E. H. Lowe Company, bankrupt, would not be bound for the rent of the premises after he ceased to occupy them as such trustee.

"That by an agreement between the trustee and Mrs. Julia Martin, O. H. Martin & Company occupied the premises from the 10th day of April to the 15th day of May, 1908, for which that company paid to Mrs. Martin the sum of $548.39.

"That under a like agreement E. S. Kirk occupied the premises from the 18th day of May until the 15th day of June, 1908, for which he paid the petitioner the sum of $300.

"Each of these occupancies were had with the distinct understanding that by allowing the premises to be so occupied Mrs. Martin would not waive any rights that she might have.

"That the E. H. Lowe Company before its bankruptcy had paid in premiums on insurance upon the premises for the year 1908, the sum of $283.95.

"That if the claim of petitioner, Mrs. Julia Martin, is a provable claim against the estate of E. H. Lowe Company, bankrupt, the following would be a correct statement of the amount of her claim:

| | |
|---|---|
| Rent from March 1st, 1908, to Sept. 1st, 1908, 6 months at $363.22 per month...................................... | $2,179 32 |
| Proportion of the state and county taxes for the year 1908, upon the property leased, which would have accrued from the 1st day of January until the 1st day of September.......... | 187 50 |
| Proportion of city taxes for the year 1908, upon the property leased which would have accrued from the 1st day of January until the 1st day of September....................... | 525 00 |
| Proportion of the insurance for the year 1908 upon the property leased which would have accrued between the 1st day of January and the 1st day of September........................ | 229 58 |
| Total ............................................... | $3,121 40 |

Credits.

| | |
|---|---|
| April 9, 1908, rent paid by O. H. Martin & Co., April 10th to May 15th, 1908......................................... | $ 548 39 |
| Rent paid by E. H. Kirk, May 18th to June 15th, 1908........ | 300 00 |
| Rent paid by E. M. Orgain, trustee, for the use of the premises for one month and nine days............................... | 625 26 |
| Insurance premiums paid by E. H. Lowe Company for the year 1908 ................................................... | 283 95 |
| Total ............................................... | $1,757 60 |
| Balance ............................................. | $1,363 80 |

"That it was agreed that whatever rights petitioner, Mrs. Julia Martin might have by virtue of any lien upon the property of the bankrupt corporation situated on the premises leased, should extend to the funds that were derived as proceeds of the sale of said property and that the funds so derived from the sale of said property exceeded largely the amount of petitioner's debt.

"That the claim of Mrs. Martin ends with the 1st day of September, 1908, because at said date by agreement between the said trustee and herself, without prejudice to the rights of either in this contention, the said premises were leased by Mrs. Martin for a long term."

On this statement of facts the referee, on the 19th day of November, 1908, denied the claim, and on petition to the District Court the referee's decision was affirmed. The claimant sues out this appeal.

Leroy A. Smith and R. W. Flournoy, for appellant.
C. K. Bell, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). Under the agreed statement of facts, the appellant has by contract in writing a lien for the amount of rent due and to become due, and she also has such lien by force of the statutes of the state of Texas. Article 3251, Sayles' Tex. Ann. Civ. St. 1897, reads as follows:

"All persons leasing or renting any residence, storehouse or other building, shall have a preference lien upon all the property of the tenant in such residence, storehouse or other building, for the payment of the rents due and that may become due; provided, the lien for rents to become due shall not continue to be enforced for a longer period than the current contract year, it being intended by the term 'current contract year' to embrace a period of twelve months, reckoning from the beginning of the lease or rental contract, whether the same be in the first or any other year of such lease or rental contract. Such lien shall continue and be in force so long as the tenant shall occupy the rented premises, and for one month thereafter; but this article

shall not be construed as in any manner repealing or affecting any act exempting property from forced sales."

This lien is good and valid in cases like the present for rent due and to become due. See Marsalis v. Pitman, 68 Tex. 624, 5 S. W. 404; Livingston v. Wright, 68 Tex. 706, 5 S. W. 407; Allen v. Brunner, 33 Tex. Civ. App. 128, 75 S. W. 821; Bateman v. Maddox, 86 Tex. 546, 26 S. W. 51. Under the agreed facts, the lien claimed herein was given and accepted in good faith and for a present consideration. It is not pretended that it was given in fraud of the bankruptcy law, or that record thereof was necessary to impart notice.

Section 67d of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]) reads:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act."

Section 64b of the same law reads:

"The debts to have priority except as herein provided and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (5) debts owing to any person who by the laws of the states or the United States is entitled to priority."

Against this showing of statutory and declaratory law in favor of the appellant's claim, it is urged (and the referee and the District Court so ruled) that although the appellant's claim by contract and statute is valid, and although her lien is not affected by the bankruptcy law, yet her claim of lien must be denied because "of the uncertainty existing with reference thereto, and because of such fact it was not and could not have been a fixed liability owing by the bankrupt at the date of bankruptcy." The argument is that the claim is contingent—e. g., the leased premises may be destroyed before the rent becomes payable, and this renders the claim nonprovable under section 63 of the bankruptcy law. It may be noticed here that at the time the referee made his decision respecting the appellee's claim all the rent claimed had become due. As to this aspect of the case, we refer to Judge Brown's opinion in Re Smith (D. C.) 146 F. 923, as strongly persuasive, if not convincing. In his well-considered opinion the referee says:

"It is my understanding of the law that a provable debt is a sum of money absolutely owing at the commencement of the proceedings in bankruptcy, certainly, and in all events, payable without regard to the fact whether then due, past due, or to become due; that is, it must be at the date of the bankruptcy a fixed liability. This does not have reference to unliquidated demands and claims of creditors holding securities."

If a contract and a statute can fix a liability, it must be conceded that it was fixed in this case. Without conceding that appellant's claim is required to be proved under section 63, or that it may not be provable under clause 1 or 4 of that section as a fixed liability founded upon an express contract evidenced by an instrument in writing and absolutely owing at date of filing petition, we are of opinion that section 63 relates principally to unsecured debts, and that

all creditors who wish to participate in creditors' meetings and dividends must bring their cases under some one of the heads therein specified, but that in relation to claimed liens, such as here presented, section 57, Proof and Allowance of Claims, section 63, Debts Which may be Proved, section 64, Debts Which Have Priority, and section 67, Liens, should be construed together and to the effect that a lien under a state law given in good faith, not impaired or affected by the bankruptcy law, should be allowed and given its legal priority.

Industrious counsel have cited in argument, and we have examined, the following reported cases: Longstreth v. Pennock, 20 Wall. 575, 22 L. Ed. 451; In re Byrne (D. C.) 97 Fed. 762; In re Mahler (D. C.) 105 Fed. 428; Atkins v. Wilcox, 105 Fed. 595, 44 C. C. A. 626, 53 L. R. A. 118; In re Hoover (D. C.) 113 Fed. 136; In re Mitchell (D. C.) 116 Fed. 87; Watson v. Merrill, 136 Fed. 359, 69 C. C. A. 185, 69 L. R. A. 719; In re McIntire (D. C.) 142 Fed. 593; In re Smith (D. C.) 146 Fed. 923; In re West Side Paper Co., 162 Fed. 110, 89 C. C. A. 110; In re Pittsburg Drug Co. (D. C.) 164 Fed. 482, all involving questions pertinent to the discussion of this case, and we find in none of the reported opinions anything really inconsistent with the views herein expressed. It is not necessary to review them further than to note that in neither Watson v. Merrill, supra, nor In re Mahler, supra, much relied upon by the referee, is the matter of a landlord's lien dealt with, and that in Atkins v. Wilcox, also cited by counsel for trustee, that the effect of the state lien was not considered.

For the reasons given, the judgments of the referee and of the district court are reversed, and the cause is remanded, with instructions to allow the lien appellant claims for the amount agreed to be due thereon, to wit, $1,363.80, and order payment of the same out of the reserved funds in the hands of the trustee.