In re GALLACHER COAL CO.

(District Court, N. D. Alabama, S. D. May 9, 1913.)

No. 11,425.

1. BANKRUPTCY (§ 316*)—PROVABLE CLAIMS—CONTINGENT LIABILITY.

Where a bankrupt was lessee of a coal mine under a lease terminable on six months' notice, abandonment of which was caused by the bankruptcy, the cost of pumping the mine thereafter, made necessary by the abandonment of work therein, was a contingent liability, not provable by the lessor against the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 474–477; Dec. Dig. § 316.*]

2. BANKRUPTCY (§ 188*)—LIENS—CONSTRUCTION OF LEASE.

A provision in a coal mine lease, giving the lessor a lien to secure all amounts that might become due under the lease, did not extend to a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

claim for damages caused by the bankruptcy of the lessee and consequent abandonment of the lease, which did not arise under, but from a breach of, the lease.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. § 188.*]

3. BANKRUPTCY (§ 184*)—LIENS—RESERVATION OF LIEN IN MINING LEASE—RECORDING STATUTE.

A lease of a coal mine in Alabama, reserving a lien on the property of the lessee on the premises to secure the payment of royalties, is not a "conveyance of personal property to secure debts," which is required to be recorded by Code Ala. 1907, §§ 3376, 3386, and on the bankruptcy of the lessee the lien may be enforced for past-due royalties.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

4. BANKRUPTCY (§ 314*)—PROVABLE CLAIMS—ROYALTIES UNDER MINING LEASE.

Under a mining lease, which provided for the payment of a minimum royalty, but to be suspended in the event of strikes, car shortage, faults, or squeezes, where, on bankruptcy of the lessee, the mine was surrendered and the lessor re-entered, it cannot enforce a lien reserved, nor prove a claim for royalties after the bankruptcy, against the property of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

In the matter of the Gallacher Coal Company, bankrupt. On petition of the Southern Iron & Steel Company to review an order of the referee disallowing its claim in part. Order modified.

Campbell & Johnston, of Birmingham, Ala., for petitioner.
A. Latady, of Birmingham, Ala., for trustee in bankruptcy.

GRUBB, District Judge. This is a petition to review the order of the referee, disallowing in part the claim of the Southern Iron & Steel Company against the bankrupt estate. The claim is based on the bankrupt's liability upon a mining lease for unpaid royalties and damages alleged to have been brought about by the abandonment of the lease by the bankrupt, either before or at the time of the filing of the petition. At the time of the filing of the petition there was due and unpaid four months' minimum royalty, amounting to $2,000. This was allowed by the referee as an unsecured claim against the bankrupt estate. It was denied any standing as a secured claim. The lease provided for its own termination by the giving of written notice six months in advance of the intention to do so. It was conceded that this notice had been given prior to the time of the filing of the petition, and that the term of the lease was thereby fixed at not more than six months from the date of bankruptcy. In this period the minimum royalty would have amounted to $2,400. This part of the claim was entirely disallowed by the referee. The balance of the claim represented the cost of pumping water out of the mine during the six months period from the time the receiver in bankruptcy surrendered the premises to the claimant. The referee also disallowed this part of the claim entirely.

[1] With reference to the part of the claim representing the damages alleged to have been caused the claimant by reason of the expense of its pumping operations, made necessary by the abandonment of the

lease by the bankrupt and the receiver, the action of the referee is approved in disallowing the claim. It is contended by the claimant that there had been a breach of the lease before the filing of the petition, in that the bankrupt had notified the claimant, some weeks before bankruptcy, of its intention to terminate the lease. The letter relied upon by the claimant as an abandonment of the lease by the bankrupt does not bear that construction. At most, it was a tentative proposal to the claimant, or notice of an intention to cancel under the six months stipulation contained in the lease. It is clear that the claim for damages for continued cost of pumping after bankruptcy, due to abandonment of the lease brought about by the bankruptcy, in view of the stipulations of the lease, was a contingent liability; in duration, dependent upon the continuance of the term of the lease, which itself was uncertain, and contingent. It was, therefore, not a provable claim in bankruptcy. Atkins v. Wilcox, 105 Fed. 595, 44 C. C. A. 626, 53 L. R. A. 118; In re Roth & Appel (D. C.) 174 Fed. 64 (affirmed, 181 Fed. 667, 104 C. C. A. 649); In re Abrams (D. C.) 200 Fed. 1005.

[2] Nor were the damages, so caused, a claim secured by the contract lien created in favor of the claimant by the terms of the lease. The lien was created to secure all amounts that might become due under the lease. The damages claimed cannot be said to be an amount that became due under the lease. They were rather a liability incurred by the bankrupt, as lessee, not under or by the terms of the lease, but because of and arising from a breach of it by the lessee. They were, therefore, not secured by the lien retained.

[3] The referee allowed the past-due royalty only as an unsecured claim against the bankrupt estate. Complaint by the claimant is made that it was not allowed as a secured claim. The contention is based on a reservation of a lien in the lease in favor of the lessor "on all such machinery, fixtures, and other property of every kind whatsoever, for anything due or to become due to the lessor under this contract," referring to property placed on the leased premises by the lessee. The lease was not recorded. The trustee contends that the stipulation for security was in legal effect an equitable mortgage, and was required to be recorded to be effective against third parties by the registration laws of Alabama.

If record of the instrument was required in order that it might be effective as against subsequent creditors, then the trustee, under the amendment to the bankruptcy act of June 25, 1910, might avail himself of the failure to record. In re Stoughton Wagon Co. (D. C.) 198 Fed. 336, affirmed (C. C. A.) 201 Fed. 1023. The controlling inquiry is whether record was necessary to the validity of the lien. Sections 3376 and 3386 of the Alabama Code of 1907 are relied on as requiring the record of the lien. The language of each is identical in its description of the character of the instruments required to be recorded. It is "conveyances of personal property to secure debts, or to provide indemnity," in each section. In order to come within the statute, the instrument must come within the description of "a conveyance of personal property," and its purpose must be to secure a debt or to provide indemnity.

The lien created by the lease was a pledge of personal property for the purpose of securing the royalty fixed by the lease, which was a debt. Can it be described as a conveyance? It did not purport to transfer title or possession out of the lessee, but merely to charge the property with the payment of the royalty. In the case of Donald v. Hewitt, 33 Ala. 534–550 (73 Am. Dec. 431), the Supreme Court of Alabama said (referring to a similar registration law of Kentucky):

"The Kentucky registration law, which was pleaded, makes a 'deed of mortgage or deed of trust' void against creditors and purchasers for valuable consideration without notice, unless deposited for record as therein required. This law has been held in Kentucky not to include an equitable mortgage, which merely gives a charge upon property, without conveying it. Bank of Kentucky v. Vance, 4 Litt. [Ky.] 174. *We follow that decision here because we approve the reasoning of it*, although it has not been pleaded or given in evidence."

In the case of Fash v. Ravesies, 32 Ala. 451, the Supreme Court of Alabama said:

"The contract, then, really amounts to nothing more than a charge of the estate with a lien which may be enforced in a court of equity. There is no conveyance, either legal or equitable, to the Ralstons. There is no transfer of legal or equitable title to them. They could not, like a mortgagee, sue for and recover the property in any tribunal. As well might it be said that the vendor's lien, or any other lien or charge, which may be enforced in equity, comes within the registration laws. In New York it is possible a different rule might prevail, because in that state 'any writing in the nature of a mortgage' is required to be recorded; and it is in reference to that statute that the decision in Parkist v. Alexander, 1 Johns. Ch. 394, is made."

It is true that the case of Pierce v. Jackson, 56 Ala. 599, seems in conflict with the cases cited. The question in that case related to the self-proving character of an instrument under a different section of the then Code (section 1275, Code 1852) from those relied on in this case, though the language in each is substantially similar.

In the case of Bailey v. Timberlake, 74 Ala. 221–224, the same court said:

"The statutes of registration relate only to conveyances of the legal estate in lands, not to equitable interests, often incapable of registration, and to which it is not practicable to apply the policy pervading the statutes. Such equities or interests are not subject to the lien of judgments or executions at law, and there can be no reason for declaring them unavailing as to the judgment creditor, who had not and cannot acquire a lien upon them for the satisfaction of his judgment."

In O'Neal v. Seixas, 85 Ala. 80, 83, 4 South. 745, 747, the same court said:

"The mortgage * * * did not, it is true, convey to the mortgagees the legal title, but only an equitable estate in the land. Yet it was 'an instrument in the nature of a mortgage,' and such instruments are authorized to be recorded, so as to be brought within the benefits of the registration statutes, and when recorded in time may operate as constructive notice to subsequent purchasers. This has been the law in this state since the Code of 1852, although the rule prior to that time was different [citing cases]. The present statute is, in substance, the same as that of New York, which was construed, as far back as the year 1815, to embrace equitable mortgages. * * * In Pierce v. Jackson, 56 Ala. 599, an equitable mortgage was held to be such a conveyance as was authorized to be recorded under our statutes of registra-

tion. The dictum to the contrary in Bailey v. Timberlake, 74 Ala. 221–224, ignores the present statute, and is based on decisions which arose under the old law, prior to 1852."

The court in the last case was construing section 3383 (sections 1287–1288, Code 1852), which contains the words "or instruments in the nature of a mortgage," which are omitted from sections 3376 and 3386, the sections here involved, which were sections 1283 and 1291 of the Code of 1852, and which have not been changed by the insertion of any such inclusive language. Inasmuch as the language of sections 3376 and 3386 has not been changed, as was the language of section 3383, and inasmuch as it had received such a judicial construction before its re-enactment in the subsequent Codes, the cases in 32 and 33 Alabama cited should be still controlling, and for that reason record of the instrument creating the lien was not required by the state law, and will prevail against the trustee in bankruptcy. That a lien to secure the payment of royalty may be created by a contract on a mining lease was impliedly recognized in the case of Etowah Mining Co. v. Wills Valley Co., 143 Ala. 623–628, 39 South. 336. The past-due royalty should have been allowed by the referee as a preferred claim.

[4] The minimum royalty for the six months following bankruptcy is a nonprovable claim against the general assets of the bankrupt estate, being contingent upon the continuance of the lease, and ceasing to be due in the event of strikes, car shortage, faults, and squeezes, by the terms of the lease itself. Atkins v. Wilcox, 105 Fed. 595, 44 C. C. A. 626, 53 L. R. A. 118; In re Roth & Appel (D. C.) 174 Fed. 64 (181 Fed. 667, 104 C. C. A. 649); In re Abrams (D. C.) 200 Fed. 1005. The lien created by the lease, however, secures all amounts due or to become due under the lease contract. It would, therefore, operate as a security for future accruing royalties during the unexpired term of the lease, unless the term has been ended by the act of the lessor. Martin v. Orgain, 174 Fed. 772, 98 C. C. A. 246; In re Meyer & Bleuler (D. C.) 195 Fed. 653; Denechaud v. Board of Adm. of Tulane Educational Fund, 200 Fed. 1022, 118 C. C. A. 665.

The record shows that immediately upon the filing of the petition against the bankrupt a receiver of the bankrupt was put in charge of the leased premises, and that shortly thereafter the receiver notified the lessor that it would cease pumping and would abandon the leased premises. Thereafter the lessor went into possession of the leased premises, and has since remained in possession as against both the receiver and the bankrupt. Having re-entered upon the leased premises, the lessor is not in a position to assert its lien for royalty accruing after bankruptcy, as against the assets of the estate. In re Desmond & Co. (D. C.) 198 Fed. 581 (affirmed by the Circuit Court of Appeals for the Fifth Circuit, Solomon v. Eggleston, 204 Fed. 1006).

The petition for review is granted, and the order of the referee modified, so as to allow the claim for royalties accruing prior to bankruptcy as a secured claim against the property on which the lien is created by the terms of the lease, and to the extent of that property alone. Such royalties are to be allowed, also, as a provable claim

against the general assets of the bankrupt. ˙ The royalties falling due after the filing of the petition and the claim for damages for breach of the lease are to be disallowed altogether.